Kent, J.
delivered the opinion of the court. 1. The first point arose, and was decided by this court, at the last term, in the case of The People v. Denton ; (see ante, 275 ;) but, as the same question has been raised and argued by counsel in this cause, it was evidently with a view that the court should reconsider its former decision. This has accordingly led me to give the subject a further and more attentive consideration ; and my researches and reflections have terminated in the following result.
Lord Coke (l Inst. 227, b. 3 Inst. 110,) lays it down as a general rule, that a jury sworn, and charged by the court, in cases of life or member, and so in all cases of felony, cannot be discharged by the court, or any other, but they ought to give a verdict. The only ‘authority, however, that he cites in favor of this general position, is a case from 21 Edw. III. 18, (Foster, 32 ; Brooke’s Corone, 42,) in which it was adjudged that a person indicted for larceny, and who had pleaded not guilty, and put himself upon¡ his country, should not, afterwards, when the jury was in court, be admitted to become an approver ; because, by solemnly denying the fact by his plea, he had lost all credit, and ought not to be received as a witness against others. (Foster, 32,33. Brooke’s Corone, 42.) This authority, cited by Lord Coke, does not warrant, or add the least sanction to his general rule, and the authority itself was afterwards overruled ; and the court used to exercise its discretion, in sometimes refusing, and sometimes admitting persons to the liberty of approving, after the jury were sworn, and evidence in part given. (Foster, 33, 34.) The same doctrine advanced by Coke, was afterwards engrafted by Serjeant Hawkins, (P. C. b. 2, c. 97, s. 1,) and by Mr. Justice Blackstone, (Com. vol. 4, p. 360,) into their elementary treatises on the criminal law j but their opinions rest solely upon the foundation of Lord Coke’s authority. There is also a note in Carth. 465, in which it is stated to have been a resolution of all the judges of England, of which Ch. J. Holt was then- *303 one, that, in capital cases, a juror cannot be withdrawn, even with the prisoner’s consent, nor in any case, civil or criminal, without it.(a)
With respect to the note in Carthew, it underwent a critical examination, in the case of the two Kinlochs, (Foster, 27, 28,) in the year 1746, and it was considered as a palpable mistake of the reporter. The case, as corrected by a MS. report of Oh. J. Eyre, was on an indictment for perjury ; and on the trial, the prosecutor finding his evidence defective, insisted on withdrawing a juror, and Ch. J. Holt refused it, saying, that in criminal cases, a juror cannot be withdrawn, but by "consent; and in capital cases, not even with consent. This case, therefore, goes only in restraint of what was properly deemed an unreasonable and oppressive claim on the part of the prosecutor.
In the ease of The King v. Jeffs, (Stra. 984,) Lord Hardwicke followed this example of Holt. He refused, in a case of barratry, to permit a juror to be withdrawn, on the motion of the prosecutor, after he had gone into proof, and found himself deficient, because the punishment annexed to that offence might be infamous ; but he said it might be, and had been done, in other eases of misdemeanors. This, like the preceding ease, controls an improper exercise of the power of the court, but does not deny its existence. It perhaps admits too much ; for to allow the prosecutor, in any case, to withdraw a juror, because he finds himself not fully prepared in his proofs, is an unreasonable indulgence, unless it should be made to appear, that some part of the testimony was wanting, through the contrivance or agency of the defendant.
It seems, then, that the position, generally denying the power of the court to discharge a jury sworn and charged in a criminal case, has originated (probably without further examination or inquiry) from a dictum, to be found in the *304 institutes of Lord Coke, and that this dictum rests upon his single authority, without the sanction of any judicial decision. None of the decisions go any further, than to prescribe a rule to the discretion of the court in particular cases. On the contrary, there are many authorities admitting and establishing the power of the court to discharge the jury, even in capital cases.
In the case of Ferrars, cited in Sir T. Raym. 84, which was on an information for forgery, it is said to have been held by all the justices, that after a jury was sworn and charged in a capital case, they may be dismissed, or a juror withdrawn, though this was said to be contrary to common tradition. Again, *on a trial for larceny, reported in 1 Yent. (p. 69,) after the jury were sworn, as the witnesses did not appear, and were suspected to have been tampered with by the defendant, the jury were discharged, and the trial put off; and Sir John Strange produced the record of a case of Hill, 8, s. 7, (Foster, 271,) where, on an indictment for murder, the jury delivered a verdict handed to them by the prisoner, and they were in consequence of it discharged and committed, and the defendant tried again. In the spirit of these decisions, Sir John Holt (Salk. 646,) admitted that even a new trial might be granted in criminal cases, if the verdict was obtained by fraud or trick; and Sir M. Hale, (P. C. vol. 2, p. 295,) in direct opposition to Coke, says, that the practice had, in his time, become ordinary for the court, after the jury were sworn and charged, and evidence given, if it appeared that some of the testimony was kept bppk, or that there might be a fuller discovery, and the offence as notorious as murder or burglary, to discharge the jury, and remit the prisoner for another trial.
In the case of the two Kinlocks, (Foster, 22 to 40,) to which 1 have already alluded, the single point decided was, that the court might, in a capital case, on motion of the prisoner’s counsel, and at his request, and with the consent of the attorney-general, before evidence given, discharge the jury, to ipt in a new defence, which the prisoner pould not *305 otherwise have; but the general question, touching the power of the court to discharge jurors, underwent a full and solemn discussion, and all the cases that I have mentioned, were cited and examined. Ten of the English judges gave their opinions seriatim, and according to the elaborate and able argument of Sir M. Foster, which he has preserved entire, and which we may consider as the opinion of all the judges, except one, as all but one agreed in the same principles and result, the court came to this *decision ; that the general rule, as laid down by Lord Coke, had no authority to warrant it, and could not be universally binding. That the question was not capable of being determined by any general rule, for that none could govern the discretion of the court., in all possible cases and circumstances, and that the case in Carthew was of little or no weight, and must have arisen from a mistake in the reporter. Sir M. Foster stated several exceptions to the general rule of Coke, and said that many more might be mentioned. Among other instances, he admitted the right of the court to discharge the jury after evidence given, because the indictment did not suit the case, and had been mistaken by the prosecutor ; and this power is also recognized in several of the books. (Comb. 401. Kelynge, 26, 52.) He further admitted the right of the court, in the cases stated from Yentris and Hale, where practices had been used to keep the witnesses out of the way; though he reprobated, and very justly, the extent to which it had been carried, in other instances, where the evidence was not sufficient to convict. (St. Tr. vol. 2, p. 710, 827.)
The instances in which the court has exercised its discretion in discharging the jury, have multiplied since the time of Foster, and have now become very considerable in point of number and importance. If a prisoner be found to be insane, (1 Hale, 35,) or in a fit, (Leach, 443,) or be taken in labor, (Foster, 76,) or if a juror escape from his fellows and go off, (2 Hale, 296,) or be taken in a fit, or be intoxicated; in all these cases it has been ruled, that the court may discharge the jury, and remand the prisoner for another trial,
*306 The general rule, as laid down by Coke, and most of the cases on the subject relate to trials for capital offences, and even there we have seen how far the rule has been justly questioned, if not wholly done away ; and the many exceptions which are conceded to exist against its universality. But the case now before the *court is a case of misdemeanor only, and the precise question is, whether, in such case, it does not rest in the discretion of the court to discharge the jury, whenever they deem it requisite to a just and impartial trial. It is worthy of notice, that there is no general rule, nor any adjudged case, denying this power in the court, in the case of a misdemeanor. The resolution of Holt, as it appears in its correct and authentic state in Foster, and the decision of Lord Hardwicke. only go to restrict the undue exercise of this power, on trials for misdemeanors, by denying to the prosecutor the liberty of having a juror withdrawn, because he happens, after entering into his testimony, to find himself unprepared through his own default; and even this extraordinary indulgence is granted, according to Hardwicke, if the punishment annexed to the offence be not infamous.
If the-question in capital cases be doubtful, there is nothing to render it so in cases of misdemeanor. The power of the court in those cases is analogous to their power in civil cases ; and they seem, in many respects, to possess the same control over the verdict, in exercising the power of awarding new trials, (6 Term Rep. 688 ; T. Jones, 163; 1 Lev. 9; 21 Yin. 478; Loft. J47; 4 BI. Com. 355; Ridg. 51; 1 Lev. 9,) and taking a privy verdict; (T. Raym. 193 ;) and the party is also entitled to a writ of error, as a matter of right. (Laws of New York, vol. 1, 184.)
I conclude, then, that as no general rule or decision that I have met with, exists to the contrary, in a case of misdemeanor ; and as the rule, even in capital cases, abounds with exceptions, and is even questioned, if not denied by the most respectable authority, that of nine of the judges of England, it must, from the reason and necessity of the thing, belong to the court, on trials for misdemeanors, to discharge the jury *307 whenever the circumstances of the case render such interference essential to the furtherance of justice. It-is not for me here to say, ^whether the same power exists in the same degree, (for to a certain degree it must inevitably exist,) on trials for capital crimes, because such a case is not the one before the court; and I choose to confine my opinion strictly to the facts before me.
With respect to misdemeanors, we may, with perfect safety and propriety, adopt the language of Sir M. Foster, (p. 29,) which he, however, applies even to capital crimes ; “that it is impossible to fix upon any single rule which can be made to govern the infinite variety of cases that may come under the general question touching the power of the court to discharge juries sworn and charged in criminal cases.” If the court are satisfied that the jury have made long and unavailing efforts to agree ; that they are so far exhausted, as to be incapable of further discussion and deliberation, this becomes a case of necessity, and requires an interference. All the authorities admit, that when any juror becomes mentally disabled, by sickness or intoxication, it is proper to discharge the jury ; and whether the mental inability be produced by sickness, fatigue, or incurable prejudice, the application of the principle must be the same. So it is admitted to be proper to discharge the jury when there is good reason to conclude the witnesses are kept away,- or the jury tampered with, by means of the parties. Every question of this kind must rest with the court, under all the particular or peculiar circumstances of the case. There is no alternative ; either the court must determine when it is requisite to discharge, or the rule must be inflexible, that after the jury are once sworn and charged, no other jury can, in any event, be sworn and charged in the same cause. The moment cases of necessity are admitted to form exceptions, that moment á door is opened to the discretion of the court, to judge of that necessity, and to determine what combination of circumstances will create one.
*There is an opinion given, in an ancient book, of approved authority, (The Doctor and Student, *309 dial. 2, c. 52,) which conies up fully to the case before the court. In answer to the 5th question of the Doetor, whether it stand with conscience to prohibit a jury meat and drink till they be agreed, the learned author (St. Germain) puts this answer into the mouth of the Student, “ that if the case happen that the jury can in no wise agree in their verdict, and that appears to the justices, by examination, the justices may, in that case, suffer them to have both meat and drink for a time, to see whether they will agree ;■ and if they will in no wise agree, I think (continues the Student) that the justices may take such order in the matter as may seem to them, by their discretion, to stand with reason and conscience, by the awarding of a new inquest, and by setting a fine upon them, that they shall find in default, or otherwise, as they shall think best, by their discretion ; like as they may do if one of the jury die before verdict, or if any other like casualties fall in that behalf.”
This power in the court, so far from impairing the goodness or safety of trial by jury, must add to its permanence and value. The doctrine of compelling a jury to unanimity, by the pains of hunger and fatigue, so that the verdict, in fact, be founded not on temperate discussion and clear conviction, but on strength of body, is a monstrous doctrine, that does not, as St. Germain evidently hints, stand with conscience, but is altogether repugnant to a sense of humanity and justice.(a) A verdict of acquittal or conviction obtained under such circumstances, can never receive the sanction of public opinion. And the practice of former times, of sending the jury, in carts from one assise to another, is *properly controlled by the improved manners and sentiments of the present day.
So a verdict, obtained unfairly, by secret and artful, or bold and direct influence over the jury, by the parties, their friends, or bystanders, would, if admitted to be recorded, be *310 a disgrace to the administration of justice. The power of discharging a jury, in these and other instances which might he enumerated, is a very salutary power, and calculated to preserve that mode of trial in its purity and vigor.
In the present case, I cannot say the discretion of the court was unduly exercised. The jury had been out a long time, and had repeatedly come into court and received its information and advice. They at last returned a verdict, which, for the present, I will assume to be an imperfect one, on which no judgment could be given. They refused to give any other verdict, either general or special. In short, the jury, after being out from Saturday evening till the afternoon of the succeeding day, return and declare, they cannot agree to give any legal verdict. The circumstances constituting a case proper for the discharge of a jury, must be more accurately perceived and more justly felt by the court before whom the trial is had, than by any other court. It must, therefore, be a pretty clear case of an abuse of discretion, to induce me to say the court below ought not to have discharged the jury.
I am, therefore, of opinion, on the first point, that the defendant ought not to be discharged.
2. The second ground on which the motion was made, is, that the conviction of two persons is requisite to constitute the crime of conspiracy ; and Aborn being acquitted, and Hoe being dead, the defendant cannot legally be convicted.
But the case of The King v. Nicolls, (Stra. 1227,) is directly in point, that one conspirator may be convicted after the other is dead, before conviction. This was *a determination by the court of K. B. and a subsequent case of The King v. Scott and Hames, (3 Burr. 1262,) is also in point, to show that the death of one of the number requisite to constitute the offence charged, will not prevent the conviction of the survivor. It was the case of a riot, in which three persons, at least, are necessary to constitute the crime. There were six persons indicted, two were acquitted and two died before trial, and Lord Mansfield *311 held, that the two who were convicted must have been guilty, together with one or both of the persons who had died before conviction, and yet the conviction of the two survivors was held good.
3. The remaining ground of the motion is, that the verdict offered by the jury was a competent verdict of acquittal, and ought to have been received.
The offence charged was a conspiracy to d.efraud the bank, and the verdict was, “ that there was an agreement between Roe and the defendant, to obtain money from the bank, but with intent to return it again.” This, however, is no answer to the substance of the charge, which was the unlawful and fraudulent intent to procure money from the bank. That finding leaves the truth or falsity of the accusation in equal uncertainty. The intent, afterwards, to return the money, might consist equally with a fraudulent or an innocent intent to procure the money, in the first instance.(a) This finding was, therefore, so imperfect, that had it been received, the court could not have given judgment upon it, and would have been obliged to award a venire de novo. The jury ought to have found either a special verdict, stating the facts at large, and leaving the law to the court, or by a general verdict they ought to have affirmed or negatived the charge of a fraudulent intent.
*1 am satisfied that this was no verdict of acquittal. If it had any operation, it would be against the defendant; for, in answer to the indictment, the jury have found the fact that the defendant and Roe did agree together to obtain money from the bank, and they have not negatived the fraudulent intent.
We are of opinion, therefore, on all the points, that the defendant ought not to be discharged.(b)(c)
Motion denied.

(a) In civil actions, the justices, upon cause, may discharge the jury. (Bro. Inq. 39, 47, 68, &c. cited in 1 Tri. per Pais, 259.)

(a) Mr. Elwyne, in his proface to the State Trials, (p. 6, 7,) exposes, ill strong terms, the injustice and absurdity of starving a jury into unanimity in Criminal cases.

(а) [Old note.] If a person do an act, the probable consequence of which is to defraud, it will, in contemplation of law, constitute a fraudulent intent. (Arguendo, 3 Term Rep. 176.)

(b) See State v. Woodruff, (2 Day’s Cases in Error, 504.)

(c) Mr. Chitty remarks, (1 Crira. Law, Am. ed. 1832, p. 634,) that it is to *312-1 he laid down as “ an uncontroverted rule that a jury sworn and charged in a capital case cannot be discharged until they have given a verdict,” and this proposition receives the assent of Mr. Stephens, (Criminal Law, 313,) upon the authority of Blackstone, as cited in the opinion of Mr. Justice Kent. And no eases have been found in England, with a single exception, where the jury were in a fit state to render a verdict, and the prisoner to receive it, that this power has been conceded to the court. Insanity of the prisoner, or illness which prevents him from understanding what is going forward ; the sickness, (Hector v. State, 2 Mis. 166; The State v. Curtis, 5 Humph. 601,) the alienism (Stone v. The People, 2 Scammon, 326,) incompetence, (People v. Damon, 13 Wend. 351; see Thomas v. Leonard, 4 Scammon, 556 ; United States v. Haskell, 4 Wash. C. C. 402,) or intoxication or escape of a juror, render it impossible that a verdict should be rendered upon considerations unconnected with the power of the court to discharge in the case put. And though such a power must exist where a legal verdict cannot be obtained, it does not follow that the court has a discretion in any other case. It has, however, been held in England, where eleven of a jury were agreed, but one said he would rather die in prison than assent, that the court would order a venire in the same manner as if he had died previous to verdict; (1 Chit. Crim. Law, 634, 2 Hale, 297, 294, 295 ; see Doct. & Stud. 271, 272; Tri. per pais, 248; but see 1 Harg. St. Tri. pref.'2d ed. vi. and vii.;) though the rule does not seem to be well settled.
But in the courts of this country, a rule has been adopted in capital cases consistent with that laid down in The People v. Olcott, and The People v. Denton. The question was distinctly presented to the supreme court of the United States in The United States v. Perez, (9 Wheaton, 579,) and Judge Story there observed: “ The prisoner has not been convicted or acquitted, and may again be put upon his defence. We think, that in all cases of this nature, the law has invested courts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated. They are to exercise a sound discretion on the subject; and it is impossible to define all the circumstances which would render it proper to interfere. To be sure, the power ought to be used with tire greatest caution, under urgent circumstances, and for very plain and obvious causes ; and, in capital cases especially, courts should be extremely careful how they interfere with any of the chances of life in favor of the prisoner. But, after all, they have the right to order the discharge ; and the security which the public have for the faithful, sound and conscientious exercise of this discretion, rests, in this as in other cases, upon the responsibility of the judges, under their oaths of office.”
A reason for this view of the subject is given by Mr. Justice Kent, in the principal case, that “ there is no alternative ; either the court must determine when it is requisite to discharge, or the rule must be inflexible, that, after the jury are once sworn, no other jury can, in any court, be sworn and charged in the same cause. The moment cases of necessity are admitted to form exceptions, that moment a door is opened to the discretion of the court to judge *312-2 of that necessity, and to determine what combination of circumstances will create one.” This reason is quoted and approved by Chief Justice Spencer in The People v. Goodwin, (18 Johnson R. 187, 204,) and by Chief Justice Savage in The People v. Green, (17 Wendell R. 55. 56 ;) see also opinion of Mr. Justice Story in United States v. Cooledge, (2 Gallison, 364.) The same doctrine will be found stated in Fell’s case, (9 Leigh, 613,) although the sickness of one of the jurors presented an undoubted reason for the discharge of the jury ; and in Tennessee v. Waterhouse, (Mart. & Yerg. 278.)
In Mahala v. The State, (10 Yerger, 535,) it is said that the discharge ought not to be granted except in a case of manifest necessity; and in Commonwealth v. Clue, (3 Rawle, 498,) neither an inability to agree, (Ned v. The Stale, 7 Porter, 187,) nor any sickness of a juror, which can be removed by refreshments, is considered within this rule. Whatever the necessity may he upon the case of State v. Ephraim, (2 Dev. & Bat. 162,) in North Carolina, it is. required to be set forth upon the record. In Pennsylvania the rule stated by Lord Coke, (1 Inst. 227, b.; 3 Inst. 110,) seems to have obtained a firm station, subject to the modification of Mahala v. The State, and accordingly a jury will not be discharged in a capital case, upon a disagreement, without the consent of the prisoner. (Commonwealth v. Cool, 6 Serg. & Rawle, 577 See Garrat v. Garrat, 4 Yeates, 244.) See farther, upon this subject, People v. Ellis, 15 Wend. 371. The State v. Wilson, 7 Alabama, 610. The State v. Moor, Walk. 134. Rex v. Edwards, 4 Taunt. 309 ; 3 Camp. 207 ; n. R. & R. C. C. 234; 2 Leach, C. C. 621. Rex v. Scalbert, 2 Leach, C. C. 620; Barbour Mag. Crim. Law, 317, 318 ; also 12 Eng. Com. Law Rep. 195; id. 196, n. 18 id. 115. The People v. Barrett, 2 Caines, 100.