Upshur, J.
delivered the opinion of the court.—'This court is desirous at all times to decline the expression of any opinion upon points not necessarily involved in the particular case before it. The first question, which presents the case of a mere inability of the jury to agree in a verdict, is of this description. If the course pursued by the court below can derive its justification from the facts and circumstances which existed in the case as disclosed by the record, it is unnecessary and might be mischievous to enquire what would be the power of the court under a condition of things much less strong and distinguishing. The response which we shall give to the second question must of necessity dispose of the case; and to this question we shall therefore coniine ourselves.
It has long been well settled, both here and in England, that in cases of misdemeanour the court has power to discharge the jury and to put the accused upon his trial before a new jury; but it has not yet been decided in Virginia that the same power exists in trials for felony. The question, however, has frequently arisen in the courts of some of our sister states, and in the supreme court of the (J. Slates, where it has been examined and discussed with so much learning and ability as to render unnecessary an elaborate examination of it here. In The People v. Olcott, 2 Johns. Cas. 301. judge Kent enters into a full and very learned review of all the *616 cases upon the subject. He shews very clearly that “ the position generally denying the power of the court to discharge a jury sworn and charged in a criminal case, has originated (probably without further examination dr enquiry) from a dictum to be found in the institutes of lord Colee,” (1 Inst. 227 b. 3 Inst. 110.) “ and that this dictum rests upon his single authority, without the sanction of any judicial decision. None of the de•cisions go any further than to prescribe a rule to the discretion of the court in particular cases. On the contrary, there are many authorities admitting and establishing the power of the court to discharge the jury, even in capital cases.” The question again came up before judge Spencer, in The People v. Goodwin, 18 Johns. Rep. 187. 1 Wheeler’s Cas. 470. where the last mentioned case was reviewed and approved. Judge Spencer, upon a full examination of all the authorities, comes to the conclusion, that “ although the power of discharging a jury is a delicate and highly important trust, yet that it does exist in cases of extreme and absolute necessity, and that it may be exercised without operating as an acquittal to the defendant; that it extends as well to felonies as misdemeanours,” &c. The same doctrine is still more broadly laid down by the supteme court, in The United States v. Josef Perez, 9 Wheat. 579. That was a capital case; and judge Story, in delivering the opinion of the court, says: “ We think that in all cases of this nature, the law has invested courts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is a manifest'necessity for the act, or the ends of public justice would otherwise be defeated.” The same doctrine is laid down in The United States v. Coolidge, 2 Gal. 364. The Commonwealth v. Bowden, 9 Mass. Rep. 494. and The Commonwealth v. Clue, 3 Rawle 498. These cases do but affirm the law as it exists at *617 this day in England. Whatever doubts there may have been in an earlier stage of her criminal jurisprudence, the doctrine is now well settled in Ann Scalbert’s case, Leach’s C. L. 620. in Rex v. Stevenson, Id. 546. and The King v. Edwards, 4 Taunt. 309. These cases all concur in establishing the power of the court to discharge the jury and to put the accused again upon his trial, in any case whatever, whether capital or otherwise.
What circumstances will justify the court in exercising this power, is not, however, so well established. In Ann Sealbert’s case, after the jury were sworn, one of them fell down in a fit; in The King v. Stevenson, the prisoner himself became suddenly ill, and incapable of attending to his defence; in The King v. Edwards, one of the jury was taken ill, and became incapable of proceeding in the examination of the cause ; in The People v. Renton, 2 Johns. Cas. 275. The People v. Olcott, and The United States v. Perez, the jury were discharged merely because they were unable to agree in a verdict. It is unnecessary, and indeed would be impossible, to enumerate all the circumstances which would justify the court in exercising this power. One general rule is deducible from all the cases; which is, that the court may discharge the jury whenever a necessity for so doing shall arise : but what facts and circumstances shall be considered as constituting such a necessity, cannot be reduced to any general rule. The pow'er to discharge is a discretionary power, which the court, as in all other cases of judicial discretion, must exercise soundly, according to the circumstances of the case. The object of the law is to obtain a fair and just verdict, and whenever it shall appear to the court that the jury impannelled cannot render such a verdict, it ought to be discharged, and another jury impannelled. This is emphatically the case of necessity contemplated in the authorities we have referred to; as where the prisoner *618 became too sick to attend to bis defence, or one of the jury was rendered physically unable to discharge his duty. There are other cases of necessity equally strong, one of which probably is, where a juror, from the peculiar condition of his mind and feelings, is manifestly disqualified from bestowing on the case that attention and impartial consideration which is necessary to a just verdict. However this may be (and we do not mean to lay down any positive rule upon the subject) we are of opinion that the case before us is one in which the necessity for discharging the jury, contemplated in the authorities, is manifest and strong. The actual sickness of a juror, and his consequent inability to discharge his duty, is admitted on all hands to present such a case of necessity. In the case before us, the juror was not actually sick, but there was every reason to believe that he would become so through longer confinement. Was the court bound to wait till the case actually occurred ? We think not. It is true, that the mere probability that confinement to the jury room would produce ill effects on the health of some member of the jury, would not in all cases justify the court in discharging the jury. It may be, that they will agree at once, or at all events in so short a time as not to render their confinement injurious to any one of them. But when they have been a long time in consultation ; when they have frequently compared opinions, and found that they could not agreewhen their confinement has already produced serious effects upon the health of one or more of them; when longer confinement would probably produce worse consequences; and when, from all the circumstances of the case, it is manifest that they cannot agree through any free action of their own minds, the attempt to compel a verdict by longer confinement would be equally opposed to humanity and the sound principles of law and justice. A necessity not less strong was presented by the *619 situation of the wife of another juror. If the object of * r . the trial be, as it undoubtedly is, to obtain a lair, just and impartial verdict, there can be but little prospect r -tit of such a result from the constrained and reluctant action of minds wholly absorbed in the deep and peculiar interest of their domestic relations. Nor can we perceive any difference between the case of necessity which arises when the longer confinement of the jury is likely to produce serious effects upon the health of one of their own body, and that which arises when the health of any other person would be equally endangered from the same cause.
It has been supposed that the conclusion to which we have arrived is forbidden by that clause of the 5th article of the amendments of the constitution, which provides that no person shall be subject to be twice put in jeopardy of life or limb for the same offence. To this we reply, that this provision of the constitution is no more than the adoption, in that instrument, of a well established principle of the common law; a principle which was present to the minds of the english judges when they decided the various cases before cited. Their judgments were not affected by that principle, for the reason that it was not involved in the cases. The prisoner cannot be said to be twice put in jeopardy, unless he has been already once tried; that is, unless a jury has once passed upon his case. If this be not so, the prisoner would be entitled to his discharge when a juror, after being sworn, and before verdict, dies, or becomes incurably deranged, or escapes from his fellows and does not return; or where the term of the court expires by operation of law, before verdict. In all these cases, and others of like kind, it is not doubted that a new jury may be impannelled; and yet this could not be done, if the clause of the constitution above cited should receive the construction which is contended for.
*620 Upon the whole, we are of opinion, that in capital . . , r cases, and consequently m all other criminal cases, it is in the power of the court, for good cause, to discharge the jury, and to put the prisoner upon his trial before a new jury. It is, however, a power which cannot be too cautiously exercised. The prisoner is entitled to be tried by the jury elected, tried and sworn in the first instance; and to deprive him of that right, except in a case of obvious and strong necessity and propriety, might work great injustice and oppression to him, and endanger the pure administration of criminal justice.
A majority of the court is of opinion, and doth advise, that in the case before us, it would not have been right or proper in the court below to discharge the prisoner, taking into consideration the facts and circumstances which existed in the case, as disclosed by the record.