Ranney, J.
At the June term, 1863, of the court of common pleas of Montgomery county, the plaintiff in error was put upon his trial for murder in the first degree. It appears from the record, that the jury, after having deliberated for about sixteen hours, returned into court, and propounded to the court a question, which we assume to have been material and pertinent to their inquiries, and having received instructions thereon, they retired and again deliberated for about seven hours, when they returned into court and reported their inability to agree upon a verdict. Upon the court proposing to discharge the jury from the further consideration of the case, the prisoner and his counsel objected thereto; and the record then proceeds: “But on consideration thereof, the court overruled said objections, discharged the jury, and ordered the said defendant to be remanded for another trial.”
At the November term, in the same year, the prisoner was again put upon his trial, to another jury, and found “ guilty of murder in the first degree as charged in the indictment.” His counsel then filed a motion in arrest of judgment, assigning for cause, “ that the court put the defendant upon trial a second time, after having, against his objection, and without sufficient reason, discharged the jury impanneled and sworn to try him upon the same indictment, and thus placed him a second time in jeopardy for the same offense.” But the court overruled this motion, and proceeded to pronounce the sentence of death upon the prisoner. To reverse this sentence, and compel his discharge, this writ of error is prosecuted.
The question involved has been argued with learning and ability by counsel, and we have bestowed upon it the careful attention which is due to an issue upon which the life of a human being depends.
Counsel for the plaintiff very justly and necessarily concede, that a case of necessity may exist, which would legally justify the course taken in this instance; but they insist, that such a case can only arise, when some intervening impediment has necessarily stopped the progress of the first trial before verdict ; that the power of discharging a jury in a criminal, and especially in a capital case, is a delicate and highly responsible *500 trust, to be exercised, on account of the disagreement of the jury, only when they have deliberated so long as to preclude all reasonable expectation that they will ever agree upon a verdict, without being compelled to do so from famine or ex haustion; that this power does not rest upon the arbitrary or uncontrollable discretion of the judge presiding at the trial, but is a legal discretion, to be exercised in conformity with known and established rules; and, finally, that unless the facts, stated in the record, clearly establish a case of necessity, the discharge will operate an acquittal of the accused, and preclude his further prosecution. Abating something from the claim made, as to what must, of necessity, affirmatively appear in the record, we have no hesitation in yielding to these propositions our entire assent; and they are certainly very strongly supported by the cases cited in argument. Hurley’s Oase, 6 Ohio Rep. 402; Mount v. The State, 14 Ohio Rep. 304; Poage v. The State, 3 Ohio St. Rep. 238; McKees’ Case, 1 Bailey’s Rep. 651; United States v. Perez, 9 Wheat. 580; People v. Goodwin, 18 Johns. R. 187; People v. Olcott, 2 Johns. Cas. 301; United States v. Coolidge, 2 Grallis. R. 364; People v. Barrett, 2 Caine’s R. 304.
Although this whole subject is one of the highest importance, in the practical administration of criminal justice, yet, it has so often engaged the attention of eminent judges, and they have so thoroughly examined and illustrated the "principles upon which their decisions are based, as to make it altogether unnecessary, if not improper, to go over the whole ground again. Whatever of doubt might once have existed in England, it is entirely certain that for nearly a century past the courts of that country have been in the constant habit of discharging juries in cases of necessity, and holding the accused for a further trial; and there is probably now no country in the world, where the jury trial is employed, that the state acknowledges its inability to punish crime, because insuperable obstacles have intervened to prevent a result upon the first attempt at a trial. On the other hand, it is perfectly well settled, that where the state intervenes, without such necessity, and prevents a verdict, the accused can not be subjected to a *501 further trial, consistently with the constitutional guarantee, that he shall not “be twice put in jeopardy for the same offense.” Const, of Ohio, art. 1, sec. 10. This was distinctly admitted in Surleg’s Case, and was the ground of decision in Mount v. The State, Poage v. The State, and People v. Barrett, already cited. It is the right of the state, and one of the most solemn and responsible of its duties, to punish crime; and it is the absolute right of any one accused of crime, to demand “ a speedy public trial by an impartial jury,” and a verdict, declaring his guilt or innocence, according to the due course of law. The one is indispensably necessary to the safety of the community, and the preservation of peace and order, and the other for the protection of the innocent, and to prevent the oppression, which might otherwise be practiced, by those having charge of state prosecutions. The problem has always been to preserve intact both of these important rights; and the object has been completely accomplished, by holding the accused liable to answer until, in the regular course of judicial proceedings, the tribunal charged with the issue, without molestation or interference, has had the fullest and amplest opportunity to pass upon the question of his guilt; and by making every interference, on the part of the government, by which a verdict is prevented, while a reasonable hope remains that one may be rendered, an absolute bar to his further prosecution. If a verdict can not be obtained upon one trial, another may be lawfully had; and the unavoidable delay which ensues, is the fault of no one. For the better protection of the accused, the law requires unanimity in the jury, before a verdict can be rendered; but to allow, on the one hand, the ignorance, perversity, or even honest mistake, of a single juror to paralyze the administration of justice, and turn loose upon the community the most dangerous offenders, or, on the other, to allow the government to trifle with the constitutional safeguards of the accused, would equally subvert the foundation principles upon which the criminal code is administered.
But Avhile a case of urgent necessity must exist, and must be found to be such by the court, before a jury, once *502 sworn in a criminal case, can be discharged without having tendered a verdict, we do not concur in the position, that all the facts and circumstances upon which this finding is predi cated, must appear in the record. Nor do we intend to imply that this necessity must be found upon evidence, in the ordi nary sense of that term. What transpires in, or before, a court, may be legitimately noticed and acted upon without further inquiry. If a juror or the accused were to fall in- a fit, it would not need a witness to inform the court of the fact, nor to justify an order arresting the trial and discharging the jury. So all communications between the court and the jury are strictly official, and are to be treated and regarded as made under the oath which binds them to an honest, faithful, and truthful discharge of their duties. For wise reasons, no investigation is ordinarily permitted of what transpires in the consultations of the jury; and when they unanimously return their inability to agree, it is conclusive of the fact that they-have not agreed, and may rightfully have its just weight in determining the question whether they are likely to do so. But as this must be mere matter of opinion, in which they are very often found mistaken, it ought never to be permitted to take the place of the actual fact, that they have deliberated so long, as, under all the circumstances attending it, to convince the court that no agreement can be expected. When the court is so convinced, and the facts are such as to justify the conviction, the order discharging the jury may be made. But as this order may most materially affect the legal rights of the party, and as a discharge without sufficient reason is in effect an acquittal, it must appear from the record, to justify holding Mm to a further trial, that an obstacle which the law will recognize as a necessity, did in fact exist; that it engaged the attention of the judge, and that his. order was based thereon, and was the -result of consideration and decision. If a further statement of the matter is desired, we see no reason to doubt the right of the party to require the signing of a bill of exceptions, containing all the facts and circumstances upon which the finding and order are based.
But it is claimed by counsel for the state, that this whole *503 matter is one of pure discretion in the court where the trial is had, and that its order, whether made rightfully or wrongfully, with cause or without, can not be reviewed on error. We are of a different opinion. It is one of the very clearest of the legal rights of the accused to require a verdict if one can 'be had; and we know of no case, in which any one can be deprived of his legal rights, at the mere irresponsible discretion of a-court. How far, and in what cases, the orders and judgments of an inferior court may be reviewed, is quite another question; and must depend upon the particular organization of each judicial system, and the statutory powers conferred upon -the appellate tribunals to entertain such a proceeding. In the judicial system of the United States, no writ of error in criminal cases has yet been provided; and this may be the ease in some of the states. But in this state, it is so emphatically otherwise, that we are not only bound to review every order and judgment of the court, which may have affected injuriously the legal fights of the accused, but also the facts, whether found by the court or the jury, upon which such orders or judgments are founded. It would, indeed, be singular, that one of the most important orders which the court can make in the progress of the case, should be excepted from this obligation. It is, however, undoubtedly true, that an inquiry into the sufficiency of the facts upon which an order of this kind is made, would involve even greater difficulty than one made upon evidence merely; and would still more imperatively require the settled application of the rule, that it should not be disturbed, unless it plainly and manifestly appeared, that no fair consideration of the facts would have warranted the decision. But when it is made plain and manifest, that the jury has been discharged, without the consent of the accused, for a reason which the law does not recognize as a necessity, or, when for a reason apparently such, it 'is made clear, that the facts did not establish its existence, we know of no way in which the integrity of the constitutional provision can be preserved, short of' holding, that the prosecution was there legally ended, and that any j udgment rendered upon a further trial, would be erroneous.
*504 The case of The People v. Green, 13 Wend. 55 (if fully reported), would seem to be opposed, not only to the views wo have expressed, but also to the doctrines advanced in the well-considered cases of People v. Olcott, and People v. Goodwin, previously decided in the same state. In this case,' the jury had been absent but half an hour, and upon their return into court, simply “ stated that they had not agreed,” and were discharged against the consent of the prisoner. There is no intimation in the report, that it was believed by the jury, or found by the court, that they would not be able to agree upon further consultation; and yet a subsequent conviction upon another indictment for the same offense, was affirmed. The remarks of the court contrast very strongly with those of C. J. Spencer in People v. Goodwin, where it was said, that the power only exists “ in cases of extreme and absolute necessity,” and “ where the jury, from the length of time they have been considering a cause, and their inability to agree, may be fairly presumed as never likely to agree, unless compelled so to do from the pressing calls of famine and bodily exhaustion; ” and there was certainly a very slender foundation in the circumstances of the case, to call for a philippic against the barbarous custom of “ compelling to unanimity by starvation,” unless that calamity ensues at a much earlier period in that state than in this. But the decision of the court is undoubtedly placed upon the ground, that it was a matter of discretion in the court below, and “ if the power had not been discreetly exercised, there could be no remedy by writ of error.” This may be true in New York, but it is not true in Ohio.
We are, then, of the opinion, that the case is properly before us, and that the question made, must be disposed of upon its merits. ' A very careful examination of the record, in the light of the principles already stated, has resulted in the conviction, that there is no just cause of complaint against the course pursued in the court below, and that no substantial right of the accused was invaded. It appears that the jury, under instructions, of which no complaint is made, deliberated a very long time; so long, as to leave very little doubt, that *505 their opinions must have been inflexibly formed, and that any change which might possibly have been wrought by a longer continuance, would more likely have resulted from mental exhaustion than intelligent conviction. They were not discharged as a matter of course, upon their reporting a disagreement. The proposition, whether they should be discharged or not, engaged the attention of the judge, was considered by him, and .upon the facts and circumstances, his decision was made. There is nothing to show that the delicate and responsible power was not discreetly exercised, but every reason to suppose that it was. It is not said, in so many words, that the court found the fact, that there was no probability remaining, that the jury would be able to agree upon a verdict; but the very proposition which the court was considering, as it is stated -upon the record, involved, not only a cause which the law allows to be sufficient for discharging a jury, but also the circumstances which, prima facie, justified the exercise of the power. When that is the case, the order necessarily imports the establishment of that, without which it could not be made.
We are, therefore, unanimously of the opinion, that this judgment must be affirmed.
The day fixed by the court below, for the execution of the sentence upon the plaintiff in error, having passed during the pendency of this writ of error, in obedience to the statute in such case provided, we do appoint Friday, the 15th day of April next, for said execution, and do order the sheriff of Montgomery county, between the hours of ten o’clock in the forenoon and four in the afternoon of that day, to carry into complete execution the sentence and judgment of that court.
Brinkerhoef, C.J., and Scott, Wilder and White, JJ., concurred.