THE PEOPLE OF THE STATE OF NEW YORK ex rel. ISRAEL BRINKMAN, Relator, v. ROBERT BARR, as Warden of the City Prison of The City of New York, Respondent.

Supreme Court, New York County, June 10, 1927.

Crimes — double jeopardy — jury was discharged while prosecution was presenting case because of illness of trial judge — defense of double jeopardy does not entitle relator to discharge in habeas corpus proceeding.

Relator, whose trial on an indictment for criminally receiving stolen property had progressed to the point of the presentation of the case for the prosecution, when, because of the illness of the trial judge, the jury was discharged, is not entitled to his release from custody by habeas corpus on the ground that a retrial will place him in double jeopardy.

Habeas corpus proceeding on the ground that a retrial will place the relator in double jeopardy.

*Leonard A. Snitkin* [*Leonard A. Snitkin* and *Leo H. Klugherz* of counsel], for the relator.

*Joab H. Banton, District Attorney* [*James G. Wallace, Assistant District Attorney,* of counsel], for the respondent.

Levy, J. The relator was indicted for criminally receiving stolen property. On January 5, 1927, he was brought to trial in Part VII of the Court of General Sessions. The trial continued with various interruptions until January fourteenth, and numerous witnesses for the prosecution had been examined. On that day the attorney for the defendant became ill and the trial was adjourned until January seventeenth, when the defendant's associate counsel appeared in court, but the presiding judge was ill and a judge sitting in another part appeared on the bench and adjourned court with the usual admonition to the jury. On January eighteenth and nineteenth the trial was similarly postponed for the same cause until January twenty-fourth, when the judge of another part again appeared and the district attorney requested that as there had been so many interruptions in the case and as the trial judge was ill and the duration of his illness was somewhat uncertain, the court declare- a mistrial. The attorney for the defendant objected and the court ruled that as the presiding judge had been physically incapitated for more than a week and there was no assurance that he would be prepared to resume even after another week, the jury should be discharged. The attorney for the defendant asked for an adjournment of a week to await the outcome of the judge's illness, but this was denied. The trial judge ultimately appeared in court on February seventh next ensuing. By reason of what the relator alleges to be an unlawful discharge of the jury under the circumstances, he claims that the proposed retrial of his case will place him in double jeopardy. Such discharge, he contends, was tantamount to an acquittal, and he seeks his release from custody by this writ of habeas corpus.

At the outset a serious objection is offered by the People as to the propriety of the remedy invoked by the relator, it being urged that the claim of former jeopardy must be raised by a plea in bar under section 332 of the Code of Criminal Procedure. This question has been the subject of consideration in many cases and the conclusions have not been at all harmonious. The general rule in most jurisdictions is undoubtedly as stated in 29 Corpus Juris, 45, that the defense of former jeopardy or former acquittal or conviction does not entitle the prisoner to be discharged in habeas

corpus. There are, however, certain exceptional situations which have arisen to qualify the inflexibility of this rule, and one of the leading cases on this subject is *People ex rel. Stabile* v. *Warden* (202 N. Y. 138). There a jury was discharged by the trial court after the case had been submitted to them for consideration, without giving the jury an opportunity to " declare themselves unable to agree upon a verdict." (Code Crim. Proc. § 428.) The Court of Appeals declared this to be in effect an acquittal, and held that the right of the accused to a discharge thereafter was properly raised under a writ of habeas corpus. In passing upon the contention that the accused should avail himself of the claim of former jeopardy by a plea in the case, it said (at p. 151): " Although the discharge of the jury was not in form an acquittal of the defendant, it was in effect such an acquittal. It was not, however, a judgment of acquittal within the express provisions of section 332 of the Code of Criminal Procedure restricting and enumerating the pleas that may be interposed to an indictment by a defendant. A former conviction or acquittal which may be pleaded in bar is a conviction or acquittal on the merits. (*People* v. *Smith,* 172 N. Y. 210, 227 * * *.) "

That case affirmed the holding of the Appellate Division to the same effect (139 App. Div. 488). Before the decision of the Court of Appeals in that case the Appellate Division in *People ex rel. Herbert* v. *Hanley* (142 App. Div. 421) had occasion again to consider the propriety of passing upon the question of double jeopardy on a writ of habeas corpus. In that case the jury was discharged during the progress of the trial, but before the case had been submitted to it, the trial court's action being prompted by a suspicion that some one had tampered with the jury. It was urged there that the court had exceeded its jurisdiction in terminating the trial as it did; that the defendant having been placed in former jeopardy could not be retried; and that a habeas corpus proceeding was the proper means of testing his right to be released from custody. In considering these propositions the court said (at p. 422): " There can be no doubt as to the power of the trial court, in the exercise of a sound discretion, to declare a mistrial and to discharge the jury before the final submission to them of the issues when, in the opinion of the court, matters have arisen during the course of the trial which make such procedure advisable. This is one of the ordinary powers resident in the court; and while the question of the proper exercise of such power is open to review, there is no question made that the power does exist. The remedy sought herein by writ of habeas corpus is not, however, the proper manner in which to secure such review."

In explaining its refusal to permit the writ in that case as against the allowance of the very remedy by the Appellate Division in the *Stabile* case, that court pointed out that the latter case was one in which the trial court had completely lost jurisdiction by its failure to comply with the statute authorizing the discharge of the jury after the case had been submitted to it. (Code Crim. Proc. § 428, subd. 2.) In the latter case a discretion was exercised which the court undoubtedly possessed under section 430 of the Code. Whether that discretion was exercised soundly or not was not a jurisdictional question to be tested by habeas corpus, but which resided in the Court of General Sessions, subject to appropriate review by the higher court. The validity of the distinction has been somewhat brought in question by the decision of the Court of Appeals in the *Stabile* case, which came four months after the *Hanley* opinion. There is considerable support in the language of Judge Chase for the view of the relator that habeas corpus was the proper remedy to require the People to prove the right to retry an accused, where the jury had been improperly discharged *either before submission or after*. Nevertheless, the cases have indicated much doubt as to whether the decision of the Court of Appeals in the· *Stabile* case was intended to be quite so sweeping. Thus, in *People ex rel. Bullock* v. *Hayes* (166 App. Div. 507) the relator was tried for manslaughter and the jury disagreed. Subsequently, he was indicted for murder in the first degree because of the precise homicide. The Appellate Division, while holding that former jeopardy did not exist, expressed doubt as to whether habeas corpus was the proper procedure to test the question, but the Court of Appeals (215 N. Y. 172), in a *per curiam* opinion, decided that it was, without, however, writing any further on that phase of the case. Three years later came the decision of the Appellate Division, Second Department, in *People* v. *Montlake* (184 App. Div. 578, 580), in which the rule was construed in this manner: " The law in this State upon the point thus presented seems to be settled as follows:

" (a) Where the jury was dismissed during the trial, but before the case had been finally submitted to it.

" In that instance the judge may at any time discharge the jury and a new trial may thereafter be had when, in his opinion, some substantial reason has arisen during the course of the trial making that course necessary in the interests of justice. (*People* v. *Olcott*, 2 Johns. Cas. 301; *People* v. *Goodwin*, 18 Johns. 187.)

" If the jury has been so discharged for an inadequate reason and without the consent of the defendant, the remedy of the defendant is not by habeas corpus but by plea of former jeopardy inter-

posed at the new trial.    (*People ex rel. Herbert* v. *Hanley,* 142 App. Div. 421, 423.)

"(b) After the case has been submitted to the jury.

"In that situation the judge can discharge the jury only in one or the other of the instances specified in section 428 of the Code of Criminal Procedure, and in that case the defendant may resort for remedy either to habeas corpus or to the plea of former jeopardy. (*People ex rel. Stabile* v. *Warden, etc.,* 67 Misc. Rep. 202; 139 App. Div. 488; 202 N. Y. 138.)"

In thus limiting the scope of the Court of Appeals decision in the *Stabile* case by the construction placed upon it, the Appellate Division referred to the reason which led to the expressions of the highest court, to the effect that the trial court had no jurisdiction, because section 428 of the Code of Criminal Procedure "intended to take away the unqualified discretion that had theretofore existed in the courts in regard to discharging a jury and make the discretion of the courts dependent upon a prior declaration by the jury of their ability or inability to agree." (202 N. Y. 138, 150.) Abundant reason certainly exists to justify the distinction between a discharge before and after the submission of the case to the deliberation of the jury. There is first, the technical difference pointed out by the Court of Appeals, that after the jury has taken the case the court has lost all discretion in the matter of discharge, whereas before this stage the court may still exercise its judgment as to the propriety of continuing with the trial, any abuse of discretion in that respect being a proper subject of review only by appeal. Practically, too, when the case has been placed in the hands of the jury, only the weightiest reasons, such as the law prescribes, should hinder that body from completing its deliberations. When the accused is possibly on the threshhold of freedom and the court has improvidently interfered with the continuation of the deliberations of the jury, he should not be subjected to further anxiety and travail. On the other hand, where the trial has merely progressed to the point of the presentation of the case for the prosecution, as here, the same reasons for disposing of the question of double jeopardy by habeas corpus do not seem to exist. True, the defendant has already been placed in jeopardy, but the court has not *ipso facto* divested itself of jurisdiction by an abuse of discretion, although where such an abuse can be shown, it may become a bar to a retrial and perhaps entitle the accused to a discharge even after conviction, by a proper motion in arrest of judgment.

The suggestion is made that a plea of former acquittal is unavailable to a defendant under the circumstances here present,

because section 332 of the Code of Criminal Procedure authorizes it only where there may be interposed a " plea of a former judgment of conviction or acquittal of the crime charged." Since, obviously, such a plea depends upon the rendition of a prior judgment — seemingly analogous to the defense of *res adjudicata* in civil causes — and as there has been no such judgment of acquittal here, it is argued that the relator is without remedy, except by the writ of habeas corpus. Some support for the unavailability of a plea in bar may be found in the utterances of the Appellate Division in *People* v. *Goldfarb* (152 App. Div. 870; affd., without opinion, 213 N. Y. 664). There, an accused was held for disorderly conduct and arraigned before the magistrate, who after examination directed that he be discharged and a new complaint taken, based on the identical facts but charging a different offense, as to which the magistrate had no final jurisdiction. He was thereafter held for Special Sessions where he pleaded a former acquittal and thereby claimed twofold jeopardy. His plea was overruled and after his conviction he moved in arrest of judgment, which was denied. The Appellate Division held that while he might have resorted to a habeas corpus proceeding, this was not his only remedy, but as there was no formal judgment of acquittal, his plea in bar was deemed properly overruled. As to the motion in arrest of judgment, it held that this was improperly denied below, and set aside the sentence and ordered the defendant discharged.

In *People* v. *McGrath* (202 N. Y. 445) a more liberal rule as to a plea of former jeopardy is expressed. It is there indicated that while a plea of a former judgment of conviction or acquittal may not, in the absence of such judgment, be entertained under section 332, subdivision 3, of the Code of Criminal Procedure, nevertheless the plea of former jeopardy, founded upon constitutional guaranties, cannot be affected by statute. Indeed, at common law, a judgment was not necessary to support a plea of *autrefois convict.* (*Shepherd* v. *People,* 25 N. Y. 406, 420; 4 Black. Comm. 330.) As Blackstone expressed it, this plea, though no judgment was ever given or perhaps ever will be, is a good plea in bar. While there is a difference in the practice between the rules governing such a plea and that of *autrefois acquit* — as is clearly pointed out in *Simco* v. *State* (9 Tex. App. 338, 348) — nevertheless the latter plea in a proper case should be likewise sustainable without the necessity of a formal judgment. As is said in *People* v. *Cignarale* (110 N. Y. 23, 30): " The doctrine that a man once tried and convicted, or acquitted of a crime on a valid indictment by a court of competent jurisdiction, cannot be tried again for the same offense has its foundation in the principles of justice and is a very ancient doctrine

of the common law. It is embodied in that provision of the Constitution of our state (art. 1, § 6), which declares that ' No person shall be subject to be twice put in jeopardy for the same offense.' In the application of this constitutional principle, it is well settled that an acquittal or conviction by verdict of a jury, although not followed by judgment or sentence, is an acquittal, or conviction which protects an accused person against another trial, provided there was a competent court and a lawful indictment, or, in case of conviction, so long as the judgment remains unreversed."

As we have seen, under the statute, the plea of a former judgment of conviction or acquittal may not be appropriate in the absence of a formal judgment. At the same time, a plea in bar in the nature of prior jeopardy may be raised, entirely apart from the statute, under the right guaranteed by the Constitution. And, as the Court of Appeals took occasion to express it in the *McGrath* case (at p. 454): " The guaranty against twofold jeopardy, however, being a constitutional right, any objection on the record which clearly raises that issue at the outset of the second trial is sufficient as a plea in bar." It must follow, therefore, that the constitutional protection of the accused remains unimpaired.

In adopting this line of reasoning, of course, no effort is made to pass upon the merits of relator's plea of former jeopardy, and in justice it may be noted that the claim by the prosecution that he has been dilatory or obstructive in preventing the disposition of his case, is wholly unfounded. The utterance of Judge PHILIPS in *Ex parte Ulrich* (42 Fed. 587, 598) seems to me quite appropriate to the somewhat peculiar situation here presented: " At this juncture of the case, I recall the utterance of Homer, that ' on the first day of his servitude the captive is deprived of one-half of his manly virtue.' Each hour of the petitioner's illegal restraint is not only a degradation in its tendency, but it is a crime against liberty."

While it is true that that case was reversed by a higher court,* the soundness of the expressions cannot be questioned. No onus can possibly attach to one occupying the position of the accused for having attempted in this manner to safeguard his constitutional rights, particularly in view of what may be considered the uncertainty on this branch of the law. Furthermore, it is entirely conceivable that the interruption of a lengthy trial by circumstances over which the relator had no control and for which he was not responsible, may have had the tendency of imposing serious and grievous hardships. But as I am not at liberty to brush aside the pronouncements of the appellate courts on this subject, the writ must be dismissed and the relator ordered remanded.

*43 Fed. 661.— [REP.