# COURT OF APPEALS,

## May 9, 1911.

# THE PEOPLE ex rel. STABILE v. WARDEN CITY, PRISON.

### (202 N. Y. 138.)

(1.) TRIAL—POWER OF COURT TO DISCHARGE JURY FOR FAILURE TO AGREE.

Where a jury is arbitrarily discharged in a criminal case without the consent of the defendant, and no circumstances exist calling for or permitting the exercise of a discretion by the court, the defendant has, by reason of the trial that thus comes to a sudden end, been placed in jeopardy within the constitutional provision that no person shall be subject to be twice put in jeopardy for the same offense (U. S. Const. 5th Amendment; N. Y. Const. art. 1, § 6), and such a discharge is a reason within the Constitution why the defendant should not be brought to trial upon the same indictment.

(2.) SAME—UNLAWFUL DISCHARGE OF JURY—CODE CRIM. PRO., § 428.

Since the enactment of section 428 of the Code of Criminal Procedure, a jury which has retired to consider its verdict in a criminal case can be lawfully discharged by the court, for failure to agree, only as therein provided, and from the plain language of the statute it appears that it was not the intention of the legislature to permit the court to exercise discretion in discharging a jury at any point of time prior to a declaration by them of their inability to agree.

(3.) SAME.

Where, after the jury upon a murder trial had deliberated less than five hours, the trial judge, without consultation with the defendant or his counsel and without defendant or his counsel being informed of the purpose thereof, and without the jury requesting it, summoned the jury into court and asked the foreman if they had agreed upon a verdict, to which the foreman replied, "not as yet," whereupon the judge discharged them, such discharge was not a reasonable exercise of the power vested in the courts by section 428.

(4.) SAME—WHEN DEFENDANT REMANDED TO CUSTODY, AFTER SUCH DIS-
    CHARGE OF JURY, ENTITLED TO LIBERTY ON HABEAS CORPUS.

    Where, after such discharge of the jury, the defendant was re-
manded to custody, he is entitled to a writ of habeas corpus and upon
the return thereof to be discharged. Having been once placed in
jeopardy, he is entitled by the Constitution, as by common law, to
his liberty. The facts before the court cannot be materially changed
and the writ should be sustained.

    People ex rel. Stabile v. Warden of City Prison, 139 App. Div. 488,
25 N. Y. Crim. 49. Affirmed.

APPEAL from an order of the Appellate Division of the
Supreme Court in the first judicial department, entered July 8,
1910, which affirmed an order of Special Term sustaining a
writ of habeas corpus and discharging the relator from custody.

    The relator was indicted for the crime of murder in the first
degree. The indictment was brought to trial at a term of the
Court of General Sessions of the city and county of New York,
held by a judge of said court with a jury. The trial continued
from the 7th until the 14th day of March, 1910. The jury was
then discharged and the relator was remanded to custody. On
March 22, 1910, a writ of habeas corpus was obtained by the
relator and duly served. The return to the writ stated that the
relator was in the custody of the warden of the city prison by
virtue of a commitment issued by the Court of General Sessions
of the county of New York following the relator's indictment
for murder in the first degree. The traverse to said return de-
nied that the relator was held under any legal warrant or writ,
and it also stated that he was tried upon said indictment, and
testimony was duly taken by and in behalf of the prosecution
and by and in behalf of the relator upon the issues formed by
his plea to said indictment of not guilty. The traverse further
stated that at the close of taking testimony on said trial the
jury was charged by the court, " and thereupon the jury retired
for deliberation at 5.15 o'clock P. M. Thereafter, at 6.30 P. M.
the jury was taken to dinner by officers of the court and re-

turned from dinner at 8 o'clock P. M. and resumed their delibera-
tion.    That at 9.22 o'clock P. M. upon the same day the jury
was brought into court and further charged by the court and
again retired for deliberation, not less than twenty minutes
being occupied in obtaining said additional charge.    Thereafter,
upon the same day at 10.10 o'clock P. M., the jury was brought
into court by order of the court without previous consultation
with the defendant or his counsel and without defendant or his
counsel being informed of the purpose thereof, and without the
jury requesting it, and the jury being in court, the following
took place between the court and the jury:

" The Court.—Mr. Foreman, have you agreed upon a ver-
dict?

" The Foreman.—Not as yet.

" The Court.—Well, I am loath to keep you together any
longer. You have been in session now for over five hours, and
I have charged you as fully upon the law as I can charge you.
I do not see that there is any additional explanation of the law
that I can give you.    I discharge you from further consideration
of the case."

It also appears therefrom that the entry made by the clerk
in the minutes of the court as the same was modified by consent
of counsel is as follows:

" The jury at 10.10 P. M. o'clock return to the bar and say
that they have not as yet agreed upon a verdict.    Thereupon
the public prosecutor and the defendant and his counsel being
present and interposing no objection thereto, and in the opinion
of the court a reasonable time having elapsed since the case was
committed to the jury, and it appearing to the court that the
jury are unable to agree upon a verdict, it is.

" Ordered that the jury be and they hereby are discharged
from further consideration of the case."

It also appears that a stipulation was entered into by and
between the district attorney and the counsel for the relator

that the entry in the minutes of the clerk of the court " was not intended to mean that the counsel for the defendant was informed in advance that the jury were to be discharged, and were consulted with and consented in advance that the jury be discharged, but was intended to mean that after the jury had been discharged no objection was interposed nor exception taken on the record, but the said counsel remained silent."

It further appears from the affidavits annexed to the traverse that a few moments before the jury were discharged they were deliberating among themselves, and at that time stood ten for acquittal of the defendant and two for a verdict of manslaughter in the first degree, and that while they were thus discussing the matter before them, an officer who had charge of the jury directed them to get their hats and coats and follow him, which they did, and they were conducted into the courtroom, and the statements made by the court and by the foreman of the jury were made as hereinbefore stated.

The traverse to said return further stated that by reason of the trial, deliberation and discharge of the jury as stated the relator was once put in jeopardy, and cannot be retried upon said charge of murder in the first degree, or in any other way prosecuted for said crime, and is entitled to his discharge upon the writ of habeas corpus. The relator was discharged and the opinion written by the judge holding the Special Term is reported in 67 Misc. Rep. 202. An appeal was taken to the Appellate Division, where the order discharging the relator was affirmed, and the opinions written thereon are reported in 139 App. Div. 488.

*Charles S. Whitman*, District Attorney (*Robert C. Taylor* and *Robert S. Johnstone*, of counsel), for appellant. Subdivision 2 of section 428 of the Code of Civil Procedure, when reasonably construed, gave the trial justice authority to discharge the jury. (United States v. Perez, 9 Wheat. 579; People

v. Green, 13 Wend. 57; People v. Adler, 140 N. Y. 331; People
v. Sheldon, 156 N. Y. 268; People v. Koerner, 117 App. Div.
40; State v. McMillen, 69 Ohio St. 247; United States v. Lee,.
123 Fed. Rep. 741; People v. Fitzgerald, 180 N. Y. 269; People
v. Rathbun, 21 Wend. 509; Vose v. Cockcroft, 44 N. Y. 415;.
Pierson v. People, 79 N. Y. 424; Dodge v. Cornelius, 168 N. Y.
242.)     Habeas corpus did not lie under the circumstances.
(People ex rel. Woolf v. Jacobs, 66 N. Y. 8; People ex rel.
Tweed v. Liscomb, 60 N. Y. 559; People ex rel. Scharff v. War-
den, 198 N. Y. 110; People ex rel. Herbert v. Hanley, 126 N.
Y. Supp. 840; Church on Habeas Corpus, § 223; Matter of
Bogart, 2 Saw. 396; Ex parte Bigelow, 113 U. S. 328.)     Habeas
corpus will not lie to determine former jeopardy.     (Ex parte
Bigelow, 113 U. S. 328; Gillespie v. Rump, 163 Ind. 457;.
Wright v. State, 5 Ind. 290; Griffin v. State, 5 Tex. App. 457;
Ex parte Crofford, 39 Tex. Cr. Rep. 547; Pitner v. State, 44
Tex. 578; People v. Ruloff, 3 Park. Cr. Rep. 126; Matter of
Miller, 7 Kan. App. 686; Whitten v. Tomlinson, 160 U. S. 243;
Matter of Mahoney, 29 Col. 442; Steiner v. Nerton, 6 Wash.
23; Ex parte Maxwell, 11 Nev. 428.)     No question of prior
jeopardy is involved in this case.     To lay a basis for jeopardy
there must have been a conviction or an acquittal, and the
mere discharge of the jury is not enough.     (United States
v. Perez, 9 Wheat. 579; Dreyer v. Illinois, 187 U. S. 71;
Keerl v. Montana, 213 U. S. 135; People v. Barrett, 1 Johns.
66; People v. Goodwin, 18 Johns. 187; People v. Reagle,
60 Barb. 527; Canter v. People, 5 Abb. Pr. [N. S.] 21;
People v. Casborus, 13 Johns. 351; People v. Green, 13 Wend.
57; People v. Olcott, 2 Johns. Cas. 301; People v. Cignarale,.
110 N. Y. 23.)

*Austen G. Fox, Moses H. Grossman, Leo R. Brilles, Herman
Joseph* and *Augustin Derby,* for respondent.     The discharge

of the jury by the trial court, in the absence of a declaration by the jury of inability to agree, was unwarranted. (People ex rel. Jerome v. General Sessions, 185 N. Y. 504; Grant v. People, 4 Park. Cr. Rep. 527; People v. Cage, 48 Cal. 323; People v. Arnett, 61 Pac. Rep. 930; People v. Goodwin, 18 Johns. 187; People v. Olcott, 2 Johns. Cas. 301; People v. Koerner, 117 App. Div. 40; State v. Allen, 59 Kan. 758; People v. Glen, 173 N. Y. 395; Wright v. State, 5 Ind. 290.) The improper discharge of a jury is tantamount to an acquittal and discharges the defendant. (Hawes v. State, 7 South. Rep. 310; Bell v. State, 44 Ala. 393; People v. Cage, 48 Cal. 323; McCauley v. State, 26 Ala. 135; Grant v. People, 4 Park. Cr. Rep. 527; State v. Wamire, 16 Ind. 357; State v. Allen, 59 Kan. 758; Wright v. State, 5 Ind. 290; Miller v. State, 8 Ind. 325; State v. Callendine, 8 Iowa, 288.) The defendant having once been placed in jeopardy, cannot again be tried for the same offense. (King v. People, 5 Hun, 297; McKenzie v. State, 26 Ark. 334; Whitmore v. State, 43 Ark. 271; O'Brien v. Commonwealth, 72 Ky. 333; State v. Paterno, 43 La. Ann. 514; State v. Sommers, 60 Minn. 90; Helm v. State, 66 Miss. 537; Alexander v. Commonwealth, 105 Penn. St. 1; People v. Cage, 48 Cal. 323; Comm. v. Fitzpatrick, 121 Penn. St. 109.) Habeas corpus was the proper means in this case to test the question. (People v. Smith, 172 N. Y. 210; Matter of Neilsen, 131 U. S. 176; Matter of Spier, 1 Dev. 491; Ex parte Glenn, 111 Fed. Rep. 257; Ex parte Davis, 48 Tex. Cr. Rep. 644; People v. Olcott, 2 Johns. Cas. 300; People ex rel. Perkins v. Moss, 187 N. Y. 410; People ex rel. Tweed v. Liscomb, 60 N. Y. 599; People ex rel. Patrick v. Frost, 133 App. Div. 179; People ex rel. Collins v. McLaughlin, 194 N. Y. 556.)

Chase, J.:

In England, during the reign of Edward III, vigorous means were resorted to for the purpose of compelling unanimity

among jurymen. Jurors who dissented from the rest were committed to prison and justices resorted to carrying jurors about with them in carts until they agreed. (Crabb's English Law, 300.) It became the common-law rule that persons serving as jurymen must decide upon a verdict in every case presented to them, and coercion in different forms was permitted and generally exercised. Such rule not only is no longer accepted and enforced, but the rule itself is now only a matter of interest to persons studying the history and development of the law. The old rule is stated by legal writers (Lord Coke, 1 Inst. 227b; 3 Inst. 110) and the records of cases establishing and asserting it have been frequently collated and discussed in more recent opinions. (People v. Olcott, 2 Johnson's Cases, 301; People v. Sheldon, 156 N. Y. 268.) There is no reason that would justify the repetition of such quotations in this opinion, and I refer to the old rule simply as a statement preliminary to quoting the statute that now asserts and controls the discretion resting in a trial judge or justice regarding the discharge of a jury, called and sworn in a criminal case, pior to rendering a verdict. Coercion of jurors has never found favor in this State.

By the Revised Statutes of 1829 it was provided: "Attaints upon untrue verdicts are abolished; and for any verdict rendered by him, no juror shall be questioned, or be subject to any action or proceeding, civil or criminal, except to indictment for corrupt conduct in rendering such verdict, in the cases prescribed by law." (2 R. S., part. 3, ch. 7, title 4, art. 4, sec. 69.)

Early in the last century Mr. Justice Kent in People v. Olcott (supra), referring to the common-law rule and reviewing at length many of the cases that had been decided prior to that time, said: " The doctrine of compelling a jury to unanimity, by the pains of hunger and fatigue, so that the verdict, in fact, be founded not on temperate discussion, and clear conviction, but on strength of body, is a monstrous doctrine, that

does not, as St. Germain evidently hints, stand with conscience, but is altogether requgnant to a sense of humanity and justice. A verdict of acquittal or conviction obtained under such circumstances, can never receive the sanction of public opinion. And the practice of former times of sending the jury in carts from one assize to another is properly controlled by the improved manner and sentiments of the present day." (Page 309.)

Growing out of the common-law rule that we have stated, it was, by Lord Coke, asserted that a jury sworn and charged in a criminal case could not be discharged until they had rendered a verdict.

In the case of People v. Olcott (supra), Justice Kent reviews the authorities to sustain the claim that a court has no power to discharge a jury in a criminal case until they have agreed upon a verdict, and concludes that the power to discharge a jury in certain cases before they render a verdict exists. In the old Olcott case the defendants were indicted for a misdemeanor and Justice Kent left a possible doubt as to the rule stated by him being applicable to capital cases by saying: "If the question in capital cases be doubtful, there is nothing to render it so in cases of misdemeanor." (Page 307.) Long before the adoption of our Code of Criminal Procedure in 1881 it became the settled rule in this state that the discharge of a jury in all cases rests in the sound discretion of the court. (People v. Denton, 2 Johnson's Cases, 275; People v. Olcott, supra; People v. Goodwin, 18 Johnson, 187; People v. Green, 13 Wendel, 55; Grant v. People, 4 Parker's Criminal Reports, 527.)

The right to discharge a jury in all cases was asserted by Spencer, J., in People v. Goodwin (supra), and he, at the same time, formulated a rule to be followed in the exercise of such discretion. We quote from the opinion in that case: "Upon full consideration, I am of opinion, that although the power of discharging a jury is a delicate, and highly importa  "

trust, yet, that it does exist in cases of extreme and absolute
necessity; and that it may be exercised without operating as an
acquittal of the defendant; that it extends as well to felonies as
misdemeanors; and that it exists, and may discreetly be exer-
cised in cases where the jury, from the length of time they have
been considering a cause, and their inability to agree, may be
faily presumed as never likely to agree, unless compelled so to
do from the pressing calls of famine or bodily exhaustion."
(Page 205.)

Under the rule established the safeguard of the public and
of persons charged with crime against an improper discharge
of a jury rested in the good judgment and integrity of the
judges.  Prior to the adoption of the Code of Criminal Pro-
cedure it is asserted that in one or more cases in this state a
jury had been discharged without the exercise of that good judg-
ment which is usually manifested in all matters resting in the
discretion of the courts.  It is also asserted that the criticisms
arising therefrom resulted in the insertion in the Code of Crimi-
nal Procedure of section 428, which asserts, defines and limits
the discretion resting in the courts relating to the discharge of
a jury before it has arrived at a verdict.  Said section 428 reads
as follows: " When jury to be discharged before agreement.—
After the jury have retired to consider of their verdict, they
can be discharged before they shall have agreed thereon only in
the following cases:

" 1. Upon the occurrence of some injury or casualty affect-
ing the defendant, the jury or some one of them, or the court,
rendering it inexpedient to keep them longer together; or,

" 2. When after the lapse of such time as shall seem reason-
able to the court, they shall declare themselves unable to agree
upon a verdict; or,

" 3. When, with the leave of the court, the public prose-
cutor and the counsel for the defendant consent to such dis-
charge."

In the case now under consideration it is not claimed that the judge presiding at the Court of General Sessions had the right to discharge the jury by reason of the first subdivision of said section.

There was no opportunity given the defendant or his counsel to consider the contemplated action of the trial judge when he called the jury before him. He did not indicate in any way in advance what action he was going to take. The discharge of the jury was precipitate and arbitrary and it would appear to have been a surprise not only to the jury but to the counsel engaged in the trial of the case. The right to discharge the jury does not come within the third subdivision of said section.

The discharge of the jury necessarily rests upon the statutory authority contained in the second subdivision of said section. The right was, therefore, dependent upon the jury having declared themselves unable to agree upon a verdict. The jury did not declare themselves unable to agree upon a verdict either in terms or by any fair inference. They were in the midst of their deliberations upon the case when, without a suggestion from them, and without the defendant or his counsel being informed of the purpose thereof, the judge presiding at the trial arbitrarily directed them to come before him. Upon their appearance before him they were not asked whether they were able to agree upon a verdict, but as to whether they had in fact agreed, in language as follows: " Mr. Foreman, have you agreed upon a verdict? " If the jury had responded through their foreman by a simple negative, it could not by any fair construction be said to have been a declaration of inability to agree. The answer in this case, however, includes much more than a simple negative. When the foreman said in answer to the question by the trial judge, " Not as yet," he clearly indicated that the jurymen had not completed their discussion and deliberation in an effort to reach a verdict and that they were in the midst of such discussion and deliberation.

and that they required further time before they could deter-
mine whether they were able to agree upon a verdict. The reply
included by implication a hope and perhaps even an expectation
of an agreement. It is suggested by the district attorney that
the simple fact that the jury had not as yet agreed, carried
with it necessarily the fact that they were at that time unable
to agree. If the jurymen had been asked five minutes after the
submission of the case to them and before they had had any
discussion or deliberation upon the verdict that should be ren-
dered in the case, whether they had agreed upon a verdict, the
answer would necessarily have been substantially the same
as that given to the question asked by the court. Such an
answer would be appropriate and true in every case from the
moment it was submitted to a jury until a verdict was reached.
It would have been true if the last ballot taken before they
were directed to come before the court had resulted in eleven
votes for acquittal and one in some doubt leaning toward an
acquittal. In this case, at the time the jury was discharged, ten
jurors had voted for an acquittal, while the other two then
favored a conviction for a lesser offense than that for which the
relator was charged in the indictment.

From the plain language of the statute itself it appears that
it was not the intention of the legislature to permit the court
to exercise discretion in discharging a jury at any point of time
prior to a declaration by them of their inability to agree. If
the statute means that the court has the right in its discretion
to discharge a jury at any time before it has agreed, then the
last clause of subdivision 2 of the section quoted is meaning-
less. If it had been the intention of the legislature to leave it
for the court to say that the jury were unable to agree without
a statement from them relating thereto, it would have passed
a statute similar to the one now existing in the State of Cali-
fornia. The Penal Code of California provides: " Section
1139: If, after the retirement of the jury, one of them be taken

so sick as to prevent the continuance of his duty, or any other accident or cause occur to prevent their being kept for deliberation the jury may be discharged. Section 1140: Except as provided in the last section, the jury cannot be discharged after the cause is submitted to them until they have agreed upon their verdict and rendered it in open court, unless by consent of both parties entered upon the minutes, or unless, at the expiration of such time as the court may deem proper, it satisfactorily appears that there is no reasonable probability that the jury can agree.

Under such a statute a reasonable discretion at all times rests in the court to determine whether "it satisfactorily appears that there is no reasonable probability that the jury can agree." We repeat that our statute is plain. Any other words attempting to construe it lead to confusion and not to clearness. It was intended to take away the unqualified discretion that had theretofore existed in the courts in regard to discharging a jury and make the discretion of the courts dependent upon a prior declaration by the jury of their ability or inability to agree. A declaration even by a minority of the jurors that in their opinion a further deliberation by them would lead to an agreement would under our statute require the court to send the jury back for such further deliberation. The jury in this case were improperly discharged without determining the relator's guilt or innocence.

It is a fundamental principle of common law as well as a right guaranteed by Constitution that a person shall not for the same offense be twice put in jeopardy of life or limb. (People v. Goodwin, supra.)

It is provided by the fifth amendment to the Constitution of the United States that a person shall not "Be subject for the same offense to be twice put in jeopardy of life or limb."

It is provided in our State Constitution (article 1, sec-

tion 6) : " No person shall be subject to be twice put in jeopardy for the same offense."

Where a person charged with crime has been once duly acquitted or convicted before a court of competent jurisdiction, he can plead such acquittal or conviction in bar to any further prosecution for such crime.

Under our Code of Criminal Procedure a *judgment* of conviction or acquital of the crime charged is necessary to constitute a good plea. (Code of Criminal Procedure, section 332.)

If a person accused of crime is placed upon trial therefor upon an indictment duly found and sufficient in form and he pleads thereto and proceeds with the trial before a jury duly sworn to try the issues so joined, he is placed in jeopardy within the constitutional provisions. There are many things that may occur during a trial which will for reasons stated by the courts permit of the discharge of a jury before rendering a verdict with or without the consent of the defendant and leave the defendant subject to a trial before a new jury as though the first jury had never been impaneled and sworn.

If the jury is discharged without the defendant's consent merely because the public prosecutor is not prepared with his evidence, the defendant is entitled to his discharge because he has once been put in jeopardy within the constitutional provisions. (People v. Barrett, 2 Caine's Rep. 304; Grant v. People, 4 Park. Crim. Rep. 527; Klock v. People, 2 Park. Crim. Rep. 676.)

Where a jury is arbitrarily discharged in a criminal case without the consent of the defendant, and no circumstances exist calling for or permitting the exercise of a discretion by the court, the defendant has by reason of the trial that thus comes to a sudden end been placed in jeopardy within the constitutional provision, and such discharge is a reason within the Constitution why the defendant should not be again brought

to trial upon the same indictment. (People v. Barrett, supra; Grant v. People, supra; King v. People, 5 Hun, 297; People v. Cage, 48 Cal. 323; State v. Allen, 59 Kan. 758; Wright v. State, 5 Ind. 290; People v. Jones, 28 Mich. 554; Dobbins v. State, 140 Ohio St. 493; Commonwealth v. Fitzpatrick, 121 Pa. St. 109; 12 Cyc. 270, and cases cited; 17 Am. & Eng. Ency. of Law, 1261, and cases cited.)

There remains but one other question for consideration and that is whether the relator's right to a discharge can be determined in this proceeding. Although the discharge of the jury was not in form an acquittal of the defendant, it was in effect such an acquittal. It was not, however, a judgment of acquittal within the express provisions of section 332 of the Code of Criminal Procedure restricting and enumerating the pleas that may be interposed to an indictment by a defendant. A former conviction or acquittal which may be pleaded in bar is a conviction or acquittal on the merits. (People v. Smith, 172 N. Y. 210, 227, 17 N. Y. Crim. 39; People v. Goodwin, supra.) It is not important to consider the relator's chances of being discharged if he should move in the Court of General Sessions for an order for his discharge upon the ground that he has been once placed in jeopardy.

The relator's claim to a discharge was substantially decided against him when he was remanded to the custody of the defendant. There is no appeal from the direction of the court given at the time that the defendant was remanded, and there would be no appeal from an order of the Court of General Sessions denying a further application for a discharge. The only appeal allowed to a defendant in a criminal case is from a judgment of conviction after indictment. (Code Criminal Procedure, section 517.) He cannot move in arrest of judgment, for there is no prospective judgment to arrest. Assuming that he could assert his claim by a subsequent plea to the indictment or by a motion in arrest of judgment in case of

a conviction on a second trial, it would be necessary for him to remain in custody until the case is again called for trial by the representative of the People and another trial is had. If there is no authority to again place the defendant upon trial upon the indictment, there is no right to restrain him of his liberty. We hold as a matter of law that the relator is in effect acquitted of the charge against him and should not be again placed upon trial upon the indictment.

A person imprisoned or restrained in his liberty within the state for any cause is entitled, except in one of the cases specified in section 2016 of the Code of Civil Procedure to a writ of habeas corpus for the purpose of inquiring into the cause of the imprisonment or restraint. (Code of Civil Procedure, section 2015.) If it appears that the prisoner is unlawfully imprisoned or restrained in his liberty the court or judge must make a final order discharging him forthwith. (Code of Civil Procedure, section 2043.)

This court held in People ex rel. Collins v. McLaughlin (194 N. Y. 556) that " Except in rare cases where the facts before the court cannot be materially changed, qualified or explained the determination of important issues ought not to be made in a habeas corpus proceeding." Page 557.) In that case the court referred to and quoted from the United States Supreme Court, with approval, as follows: " The Supreme Court of the United States has recently announced its adherence to this doctrine." In Riggins v. United States (199 U. S. 547, 548) Mr. Chief Justice Fuller states: " Ordinarily the writ will not be granted when there is a remedy by writ of error or appeal, yet in rare and exceptional cases it may be issued, although such remedy exists."

In this case the right to discharge the jury does not rest upon a question of fact. The facts are conceded and the authority of the presiding judge at the trial depended solely upon a question of law. He had no discretion to exercise because

the jury had not declared their inability to agree. The defendant has been once placed in jeopardy, and is entitled by Constitution as by common law to his liberty. Although entitled to his liberty as in case of a verdict of acquittal, he is in custody with no right of appeal from any mandate by which he is restrained. The relator's constitutional rights cannot be adequately preserved other than by the writ of habeas corpus. This is one of the cases where the facts before the court cannot be materially changed, and where the writ should be sustained. (Ex parte Neilson, 131 U. S. 176; Ex parte Glenn, 111 Fed. Rep. 257; Ex parte Davis, 48 Tex. Crim. Rep. 644; People v. Olcott, supra; People ex rel. Perkins v. Moss, 187 N. Y. 410, 20 N. Y. Crim. 569; People ex rel. Tweed v. Liscomb, 60 N. Y. 559.)

This is distinguishable from People ex rel. Scharff v. Frost (198 N. Y. 110). In that case the relator was held by virtue of a judgment. The court had jurisdiction of the relator and of the crime of which he was charged and the reason why the relator therein claimed that he was entitled to a discharge rested upon the determination of a question of fact in connection with the construction of a statute. If the relator therein had availed himself of a motion in arrest of judgment he would have had an adequate opportunity to review the action of the trial court in granting the judgment against him.

As we have already shown in this case no adequate remedy has existed or now exists for the protection of the relator.

The order should be affirmed.

CULLEN, C. J. (dissenting):

I vote for the reversal of the order appealed from. Though originally the common law was different, it became the settled law of this state, prior to the enactment of the Code of Criminal Procedure, that the time at which a jury, which after consideration of a case had been unable to agree upon a verdict, was to be

discharged solely in the discretion of the trial judge. This was so held by the old Supreme Court even where the jury had the case under advisement for a period of only thirty minutes. (People v. Green, 13 Wend. 55.) Such is also the conceded law in the United States courts. The learned counsel for respondent cites some declarations in Grant v. People (4 Parker's Crim. Rep. 527), but there is nothing in that case in conflict with the Green case. On the contrary, the Green case is cited with approval. But the plea of the defendant was sustained because it alleged that the discharge of the jury was arbitrary " where no circumstances exist calling for the exercise of the discretion of the court," and the validity of the plea, as a plea, was to be determined by its face and not by the proofs offered to sustain it. The question is, therefore, whether section 428 of the Code of Criminal Procedure, which provides that "After the jury have retired to consider of their verdict, they can be discharged before they shall have agreed thereon only in the following cases. * * * 2. When after the lapse of such time as shall seem reasonable to the court, they shall declare themselves unable to agree upon a verdict," has altered the common-law rule. No such intent should be ascribed to the legislature unless the language of the section is express to that effect. The language of the Code is, " they shall declare themselves unable to agree upon a verdict." The jury was asked wheher it had agreed upon a verdict, and the foreman responded: " Not as yet." This was a clear declaration that at the time the response was made the jury was unable to agree upon a verdict. What the section calls for is not any declaration from the jurors as to their belief, expectation or hopes that in future they may be able to agree, but for a present fact and existing condition. Let us see where the doctrine which has prevailed below will lead. Suppose that, though the jury is not able to agree, some of the jurors think they may be able, after future deliberation, to agree, while others entertain a contrary view. What action

can the court take? Must the jury be unanimous in their belief as to inability to agree and may one dissenter keep the jury out indefinitely at his election, or shall the court poll the jury, and is the question to be decided by a majority, contrary to the usual rule which requires the action of a jury to be unanimous? It is true that case is not before us, but a great part of the difficulties in which at times courts find themselves involved arises from failure to look forward and see what will be the result of the rules of law they declare.

VANN, WERNER and WILLARD BARTLETT, JJ., concur with CHASE, J.; HISCOCK, J., concurs with CULLEN, Ch. J.; HAIGHT, J., absent.

Order affirmed.

---

# NOTE ON DISCHARGE OF JURY BEFORE VERDICT AS EFFECTING FORMER JEOPARDY.

GENERALLY.

At English Common Law, whenever any evidence whatever had been given, the jury could not be discharged, unless in cases of the utmost necessity, until a verdict had been rendered. Foster Crown L. 27.

A manifest necessity for the discharge of the jury must exist, and it is left to the courts in their discretion to decide whether such necessity exists under the circumstances of each particular case. Canter v. People, 1 Abb. Dec. 305.

Where the jury is discharged for a reason insufficient in law and without an absolute necessity for it existing, such discharge is held to be equivalent to an acquittal, and it may be pleaded in bar to a subsequent prosecution for the same offense. King v. People, 5 Hun, 297.

The discharge of a jury, in a criminal case, without agreeing on a verdict, is a matter resting in the sound discretion of the court in which the trial is had; it seems that the power of the court should be exercised with the greatest caution. People v. Green, 13 Wend. 57.

The courts are to exercise a sound discretion on the subject; and it is

impossible to define all the circumstances which would render it proper to interfere. To be sure, the power ought to be exercised with the greatest caution, under urgent circumstances, and for very plain and obvious causes; and in capital cases especially, the court should be extremely careful how they interfere with any of the chances of life, in favor of the prisoner. But after all, they have the right to order the discharge. U. S. v. Perez, 9 Wheat. (U. S.) 579.

## DEFECTIVE INDICTMENT.

If it is discovered on the trial that the offense is charged as of a date subsequent to the indictment, the jury may be discharged, and it is not an acquittal. Johnson's Cas., 5 City Hall Rec. (N. Y.) 103.

## FAILURE OF JURY TO AGREE.

The discharge of the jury, after full consideration of the case and a failure on their part to agree, and there being no reasonable expectation that they will come to an agreement, held not to effect a bar to another trial, this holding being placed on the ground that such a condition of affairs constitutes urgent and absolute necessity, and justifies the court in ordering the discharge of the jury. People v. Olcott, 2 Johns. Cas. 275.

If the jury after deliberating so long on the prisoner's case as to preclude a reasonable expectation that they will agree upon a verdict unless compelled to do so by famine or exhaustion, they may be discharged, and the prisoner again tried by another jury. People v. Goodwin, 18 Johns. 187.

## JUDGE'S ILLNESS.

Where illness of judge causes discharge of jury after latter has been impanelled and sworn, the accused cannot plead former jeopardy. Nugent v. State, 4 Stew & P. (Ala.) 72.

Where, after a trial was begun, it was so continued from day to day and other cases were disposed of, and on the adjourned day the jury was discharged on account of the illness of the presiding judge, the discharge amounted to an acquittal and was a bar to a subsequent trial. Ex parte Ulrich, 42 Fed. 587.

## JUROR'S DISQUALIFICATION.

Where the jury is discharged after the beginning of the trial because of the disqualification of a juror there is neither an acquittal nor former jeopardy, even though the defendant offers to waive such disqualification

and to proceed with the remaining jurors, or with other jurors drawn from the panel to make up the legal number. People v. Damon, 13 Wend. 351.

The discharge of the jury after arraignment, but before any evidence has been received, because of the disqualification of the jurors, and the subsequent impanelling of a new jury, does not entitle the accused to plead former jeopardy. Watkins v. State, 60 Ga. 601.

## JUROR'S ILLNESS.

Where a juror's statement as to his illness is not made under oath and no medical evidence is heard on the subject, a discharge is held to be improper, and a bar to a subsequent indictment and trial. Rulo v. State, 19 Ind. 298.

The discharge of the jury and the postponement of the trial in a criminal action because of the illness of one of the jurors incapacitating him from performing his duties is authorized, and a plea of former jeopardy cannot be based upon such discharge and postponement. People v. Smith, 172 N. Y. 210.

## SEPARATION OF JURY.

Where, after the jury has retired, they separate, they may be discharged and a new jury sworn. People v. Reagle, 60 Barb. 527.

Where, with the consent of the accused, the jury is permitted to separate before they retire to consider their verdict, and on reassembling it is found that one of them is missing, and the jury is thereupon discharged for such cause, the defendant may subsequently plead former jeopardy. State v. Ward, 48 Ark. 86.

Where the jury was discharged on motion of the State because they had separated after being sworn, but before evidence had been taken, the defendant might be subsequently tried for the same offense. State v. Costello, 11 La. Ann. 283.

## WHEN ACCUSED ABSENT.

The accused having a right to be present during the entire trial, an acquittal is worked by the discharge of the jury in his absence, for whatever cause. State v. White, 19 Kan. 445.

But if the absence of the accused is caused by his flight during the progress of the trial, the jury may then be discharged, and he may be subsequently reindicted. State v. Battle, 7 Ala. 259.

Right of accused to be present when the jury is discharged, may be waived by his counsel. People v. Smalling, 94 Cal. 112. The contrary held. Cook v. State, 60 Ala. 39.

WITNESS'S ABSENCE.

Where defendant has pleaded, and the district attorney finds himself unprepared with evidence, owing to the absence of a material witness, and therefore withdraws a juror against the objections of the defendant, the latter cannot be again tried. People v. Barrett, 2 Cal. (N. Y.) 304.

The rule is based sometimes on the fact that the accused has been in jeopardy, and sometimes on his right to a speedy trial, but it is a sound rule that the discharge of the jury under such circumstances operates as an acquittal. Klock v. People, 2 Park. Crim. 876.