Jack Rosenberg, J.
This is a petition for a writ of habeas corpus submitted on behalf of G-eorge Kyrimes seeking the release of the petitioner from imprisonment in the Men’s House of Detention where he is being held for retrial on a charge of robbery in the first degree. It appears that the petitioner was brought to trial on the said charge in the Supreme Court of the State of New York in the County of New York on June 18, 1971, before Justice Arnold G-. Fraiman. Defense counsel on that date requested that selection of jurors be postponed until Monday, June 21, in order that the defense be afforded more time for investigation and preparation for trial. This application was granted. A jury was selected on June 21 and the Assistant District Attorney made his opening statement to the jury and the taking of testimony from the first witness for the prosecution was begun. On June 22 the taking of testimony from all wit *172 nesses for the prosecution and defense was completed, both sides rested, and counsel for both sides completed their summations.
The Assistant District Attorney inquired if it would be possible, despite the fact that it was late in the day, to charge the jury immediately and let them begin their deliberations immediately. The court replied that the entire testimony in the case had required less than the equivalent of one full day. The court also stated that to avoid the possible necessity of sequestering the jury in. a hotel overnight, if their deliberations proved lengthy, it would charge the jury at 9:30 a.m. the next morning, June 23.
On the morning of June 23 the court completed its charge to the jury and the jury retired to deliberate on its verdict at 10:32 a.m. The record of the trial proceedings for June 23 shows that thereafter the jury returned to the courtroom at 12:25 p.m. to ask for a reading of some of the testimony of an arresting police officer, and then resumed its deliberations at 12:37 p.m. It returned at 2:55 p.m. to ask the court if it had to reach a unanimous verdict in all three counts of the indictment[1] and was advised that it was the duty of the jury, if it was possible, to reach a unanimous verdict on each count. The jury resumed its deliberations at 2:58 p.m. During this brief session, Juror No. 3 said “ We are deadlocked on one of the three counts ”.
At 3:52 p.m. the jury again returned to the courtroom. The court noted receipt of a note, court’s Exhibit 3, from the jury, asking for clarification of the third count, and as to another aspect of the case. The court responded to these questions and the jury resumed its deliberation at 4 -.00 p.m.
At 4:44 p.m. the jury again returned to the courtroom after sending a note, court’s Exhibit 4, stating: “We have not been able to arrive at a 100 per cent verdict on any one of the three charges.” The court noted the time, and advised the jury that it had “ a full two hours of deliberations before dinner time that dinner would be arranged for the jury if it had not reached a decision by dinner time. The court said: “ You have plenty of time ” and offered help to the jury in its deliberations, if there was any aspect of the law that was bothering it. At this time the court also entered in the record as court’s Exhibit 5 a note it had received from Juror No. 5 asking if he could speak to the court “ on taking myself off the jury”, and, after asking the juror if he was suffering from any *173 physical ailment and being told he was not, informed the juror he could not be excused. The court told the juror he had “ undertaken a very serious responsibility ” which he had “ to fulfill ”, to reason with his fellow jurors with a view to arriving at a verdict. The jury then resumed its deliberations at 4:55 p.m.
At this point the court addressed counsel for the prosecution and the defense, saying: “Now, Miss Schlesinger and Mr. Andrews, as you know I am scheduled to go to Europe tonight. I intend to go to Europe, but I am reluctant to declare a mistrial in this case, - however, because of my personal commitments. Accordingly, I would like the consent of the Assistant District Attorney and defense counsel to have another Justice receive the verdict in this case, in the event that the jury is still deliberating at a time when it is too late for me to remain in court and at the same time catch my plane.” In response, counsel for the defense reported her client’s desire to know who the substitute Justice would be, and when he would come in. The court stated the other Justice ‘ ‘ will take over at 8:30 ” without specifying who it would be, adding: “I do not intend to keep the jury overnight. If they have not reached a verdict by about 11:00 or 11:30, I will suggest they be discharged at that time. But I would propose that they continue their deliberations until approximately that time.” This discussion ended in an off-the-record colloquy with the court. There is no indication on the record that the defendant or his counsel consented to either the substitution of another Justice or to the setting of an 11:30 p.m. deadline for a verdict, absent which the jury would be discharged.
At 6:30 p.m. the jury again returned to the courtroom. In response to the Clerk’s query, the foreman reported that the jury had not yet reached a verdict on any of the crimes of the indictment. After noting the time, the court asked the foreman if he thought that if the jury kept deliberating for another few minutes it would reach a verdict as to any counts of the indictment, adding that if not, the court would send the jury to supper at this time. The court also asked the foreman to check with his fellow jurors as to their desire on this question. The foreman replied, “I don’t think we will come to a verdict ”. Stating that it had no intention of discharging the jury, the court asked if the jury wanted to have supper or to go on deliberating a while longer, to which the foreman and Juror No. 8 are recorded as stating the jury would have supper. The court stated it would ask the court officers to arrange to take the jury to dinner and went on to say that it might not be there “during the course of this evening ” to *174 receive the verdict when and if it was reached but that another Judge would be there to receive it “because I have another engagement that I cannot under any circumstances put over”. Before the jury retired at 6:40 p.m. to. resume deliberations the court again asked if it could help the jury in reaching a verdict, if there was any particular problem with which the court could help. Juror No. 7 replied, “ Not the sort of problem we can discuss here in the courtroom, unless you can come into the jury room and hear us ”. The court then said it could not help the jury in deciding the facts; it could only help if the jury was confused or not clear as to any area of law. Juror No. 5 then asked for an explanation by the court of the meaning of a reasonable doubt for some of his fellow jurors. This the court did and the jury was excused until 8:00 o ’clock.
At 10:35 p.m. the jury again returned to the courtroom with a request that the direct testimony of one of the arresting officers be read. This was done. The jury resumed deliberations at 10:40 p.m.
At 11:05 p.m. the jury returned to the courtroom. The Clerk asked whether it had reached a verdict and the reply was “ No ”. He then asked the same question as to each of the three counts of the indictment and was answered in the negative each time. The court then said: “It is now seven minutes after 11:00. You have been deliberating for over twelve hours. You are excused at this time. Please report back to the central jury room at 10:00 o’clock tomorrow morning. The Court declares a mistrial.”
The petition in support of the writ of habeas corpus alleges that the discharge of the jury by the court was improper, was done without the consent of counsel, and that the petitioner cannot be retried without subjecting him to double jeopardy in violation of his rights under the Constitution and laws of the United States and the State of New York, and that petitioner should therefore be released from custody and the case against him be dismissed. Tt states that the dismissal of the jury and the declaration of a mistrial by the court were done without the jury having been first asked if it was hopelessly deadlocked, or if further deliberations by it might serve a useful purpose, in disregard of the specific requirement of section 428 of the Code of Criminal Procedure, then the applicable law, which provided that after a jury has retired to consider their verdict they can be discharged before they have agreed thereon only “2. When after the lapse of such time as shall seem reasonable to the court, they shall declare themselves unable *175 to agree upon a verdict; or 3. When with the leave of court, the public prosecutor and the counsel for the defendant consent to such discharge.”
Here there is no indication on the record of any consent by counsel to the defendant. Therefore, the requirements of section 428 can have been complied with only if it appears that, in addition to the court’s finding that a reasonable time had elápsed, the jury declared itself unable to agree upon a verdict. In this respect, it is necessary to give consideration to an affidavit this court has received from the court which discharged the jury and declared the mistrial. In that affidavit the trial court stated that “ after nearly twelve hours’ deliberation” it determined ‘1 that the jury was hopelessly deadlocked and could not reach a verdict on any of the counts submitted to them.” The affidavit sets forth the court’s reason for reaching this conclusion. First the court states that fully eight hours before 11:00 p.m. ‘ ‘ a juror spontaneously informed the court that they were deadlocked and many jurors nodded in agreement.” Presumably the court is referring to what the record indicates occurred at 2:55 p.m. when the jury returned to the courtroom having sent a note to the court asking whether it had to reach a unanimous verdict on “ one of three, two of three or all three counts ” and was told by the court that a unanimous verdict must be reached on each count. At this time when the jury was in the courtroom, Juror No. 3 is shown on the record as having said: “We are deadlocked on one of the three counts.” There is no indication that any or how many of the other jurors nodded their heads and whether, if so, the nods were in agreement. The statement of the juror, in any case, is only as to “ one of the three counts ’ ’, hardly an indication of the kind of deadlock which would allow the inference that the jury was thereby declaring itself ‘ ‘ unable to agree upon a verdict ’ ’, the requirement of the statute. At best such ambiguous circumstances should call for the putting of a specific question to the foreman as to whether there was a deadlock such as to make any verdict impossible, with a response on the record showing it reflected the view of the jury. And the colloquy following this statement by Juror No. 3, with the court saying: “ I don’t want to know what your deliberations are at this point. I will ask you, Mr. Foreman, have you reached a verdict as to any of the three counts, without telling me what the verdict is?” and the foreman, replying, “ None of the counts ” and the court then asking the foreman if the jury’s question has been answered and directing the resump *176 tion of deliberations by the jury, hardly supports using this to uphold a finding that it was a declaration by the jury that they are unable to agree upon a verdict.
The trial court’s next reason is that the foreman, just before 5:00 p.m., “sent a note to the court indicating that the jury was deadlocked.” The record shows that at about 4:44 p.m. the foreman sent the court a note reading: “ We have not been able to arrive at a 100 per cent verdict on any one of the three charges. ’ ’ Whether such a note can properly be read as indicating a deadlock or merely as reporting no success yet, is by no means clear. And the .reaction of the trial court to it and to this request from Juror No. 5 to be taken off the jury as indicating an established deadlock, an inability of the jury to agree on a verdict, is hardly consistent with inferences drawn by other courts in analogous situations. (See People ex rel. Luetje v. Ketcham, 45 Misc 2d 802 [1965]; People v. Albanese, 29 A D 2d 516 [1967].)
The trial court next refers to its colloquy with the foreman at 6:30 p.m. as indicating to him 1 ‘ that the jury believed it was hopelessly deadlocked at this time.” But the court’s question was only 1 ‘ Do you think that if you keep deliberating for another few minutes you would reach an agreement as to any counts of the indictment? (emphasis added) and the foreman’s reply “ I don’t think we will come to a verdict ” was obviously directed to whether “ another few minutes ” would suffice to reach a verdict.
Similarly, a careful reading of the record as to the remark of Juror No. 7 that the trial court could be of help only if it could come into the jury room and hear the jury and the remark of Juror No. 5 that some of his fellow jurors would be helped if the court could simplify reasonable doubt shows that neither remark requires any inference of either deep discord or desperation on the part of the jury or requires or even supports a conclusion that the jury was hopelessly deadlocked either at 6:30 p.m. and even if that were so, it is no evidence that they were so at 11:00 p.m. At most, what these comments demonstrate is that, at 11:00 p.m. the trial court should have put the jury to the test set up in section 428 by asking it a specific question which would have required it to declare itself unable to agree upon a verdict, before it decided to discharge the jury and declare a mistrial. Its indication to counsel for both sides that its own prior commitments might make it necessary for it to conclude the trial by 11:00 p.m. or 11:30 p.m. would appear to emphasize the necessity for it to insure full satisfaction of the *177 requirements of the applicable subdivisions of section 428 before it discharged the jury without its reaching a verdict.[2] Any other course of action chanced opening up questions of double jeopardy.
Petitioner bases his claim to release from custody on the leading case of People ex rel. Stabile v. Warden (202 N. Y. 138 [1911]) involving a situation quite similar to that in the instant case. In Stabile, the Court of Appeals, in a decision by Judge Chase, upheld a writ of habeas corpus where the trial court had discharged a jury after it had deliberated on a criminal charge for five hours, doing so, as would .seem to be the case here, without first asking the jury if it believed it could not agree. There the jury had stated in response to a question as to whether it had reached a verdict, that it had not. On the basis of this statement, the People argued, on appeal, that the requirements of subdivision 2 of section 428 of the Code of Criminal Procedure had been satisfied. Judge Chase rejected this view, saying that a retrial would expose defendant to double jeopardy in violation of his constitutional rights. The court noted (pp. 149-150) that a mistrial should not be called unless: ‘ ‘ From the plain language of the statute itself it appears that it was not the intention of the legislature to permit the court to exercise discretion in discharging a jury at any point of time prior to a declaration by them of their inability to agree. If the statute means the court has the right in its discretion to discharge a jury at any time before it has agreed, then the last clause of subdivision 2 of the section quoted is meaningless * * * We repeat that our statute is plain. * * * It was intended to take away the unqualified discretion that had theretofore existed in the courts in regard to discharging a jury and make the discretion of the courts dependent upon a prior declaration by the jury of their ability or inability to agree. A declaration by even a minority of the jurors that in their opinion a further deliberation by them would lead to an agreement would under our statute require the court to send the jury back for such further deliberation.”
To the same effect is the ruling in Matter of Adamo v. Justices of Sup. Ct. (28 A D 2d 653 [1967]) where the Appellate Division, First Department, ruled in an article 78 proceeding to restrain *178 the Bronx County Supreme Court from taking further action on an indictment against the petitioner, that the writ sought should be granted where the trial court had granted a mistrial in the face of a declaration of a jury that they would try to reach an agreement on a verdict, their failure, one-half hour later, to state that they now felt an agreement was impossible, the expressed wish of prosecution and defendant’s counsel that the jury be permitted to continue their deliberations, the objection of defense counsel to any mistrial and her plea to the court to comply with the jury’s most recent request that certain testimony be reread to them. The Appellate Division ruled that the trial court was without discretion to discharge the jury, citing People ex rel. Stabile v. Warden (202 N. Y. 138, supra). The Appellate Division also said that petitioner, having once been placed in jeopardy, is, in effect, acquitted of the charges and should not be again placed on trial upon the indictment.
People ex rel. Luetje v. Ketcham (45 Misc 2d 802, supra) is another decision which follows Stabile. In that case the Special Term of the Supreme Court, Nassau County, stayed the District Attorney from further proceedings involving retrial of the applicant, Luetje, on a charge of petit larceny. Applicant had been tried on January 6, 7 and 8, 1965. The case was submitted to a jury at 11:15 a.m. The jury returned to the courtroom at 1:00 p.m. for further instructions and retired to deliberate further thereafter. At 1:40 p.m. the jury returned to the courtroom and the foreman announced, ‘ ‘ We are unable to agree on a verdict”. The court then asked about further deliberation after lunch. In response four members of the six-man jury said they were deadlocked. Juror No. 4 said, “ I don’t know so [sic] maybe if we thought about it while having lunch we might [reach a verdict]. Juror No. 6 said, “ I feel we should give it a little more deliberation ”. Thereupon the court declared a mistrial and said ‘ ‘ the defendant is therefore discharged on his own recognizance. The defendant is released in his own custody.” (p. 803).
The defendant thereafter brought a proceeding in the nature of a petition for habeas corpus seeking a .release from custody and an order restraining the respondent District Attorney from bringing him to trial in the Nassau County District Court a second time. Justice Daniel Gr. Albert of the Supreme Court found that to retry the defendant ‘ ‘ would constitute double jeopardy ” citing subdivision 2 of section 428 of the Code of Criminal Procedure and Stabile. He therefore stayed the Dis *179 trict Attorney from retrying the defendant, noting that as a quasi-judicial officer, the District Attorney may be prohibited pursuant to article 78 of the CPLB from proceeding in a matter of which he no longer has jurisdiction. The court said (p. 804):
1 ‘ As the effect of the unauthorized discharge of the jury was an acquittal of the relator (People ex rel. Stabile v. Warden, supra, p. 152) the respondent is without jurisdiction to again prosecute him on the offense involved.”
The court denied the writ of habeas corpus because the applicant was not in custody having been discharged in his own recognizance after the mistrial in his original trial.
To the same general effect were two cases where the trial court, in the absence of a specific declaration by the jury that it was unable to agree, held a jury in session over the objection of the defendant who sought a mistrial, until it reached a verdict of guilty. In People v. Albanese (29 A D 2d 516 [1967]) this colloquy occurred between the trial court and the jury foreman: “We feel it is impossible to come to a decision tonight.” Court: “ If I sent you to a hotel and you got a good night’s .rest and you started tomorrow, what is your opinion? ” Court: ‘‘ Then continue your deliberations. I have no right to interrupt your deliberations * * * unless there is absolutely no hope, and, you tell me, it isn’t absolutely hopeless.” “ Foreman: Some of the jurors feel we have come to a loggerhead tonight and tomorrow it may change.” The appeals court ruled it was appropriate to give the jury further balanced instructions to aid its deliberations, adding (pp. 516^517): ‘ ‘ Moreover, the declaration by the Trial Justice of a mistrial at that point because of a supposed ‘ hung ’ jury would have endangered the continued validity of the indictment. It is apparent that the court recognized the established law of New York that, at least in the absence of a request by or express consent by the defendant or his counsel (Code Grim. Pro., § 428, subd. 3), a court has no right to dismiss a jury deliberating in a criminal case ,until it is clear that they cannot reach a verdict (Code Grim. Pro., § 428, subd. 2). To dismiss a jury under such circumstances and order a new trial amounts to placing defendant in double jeopardy, and would invite a motion by the defendant for dismissal of the indictment on such ground, or an application for release under a writ of habeas corpus, or an application for a writ of prohibition restraining the court from retrying the defendant.” In this case the defendant was convicted. When the appeal first came before the Appellate Division it reversed and granted a new trial on the law and *180 in the interests of justice. The Court of Appeals reversed, hut authorized the Appellate Division in its discretion, to grant a new trial. A majority of the Appellate Division did so, but the minority dissented on the 'basis of subdivision 2 of section 428 of the Code of Criminal Procedure and People ex rel. Stabile v. Warden (supra), arguing that no new trial was needed because the trial court had followed the statute and Stabile.
In People v. Presley (22 A D 2d 151 [1964]) the Appellate Division, Third Department, also rejected a defense attempt to overturn an adverse jury verdict of conviction on the ground that the trial court should have granted a defense motion for a mistrial where, after a seven-day trial, the case was submitted to the jury at 5:20 p.m., the jury, at 12:35 a.m. sent a note to the court declaring that “ after several ballots and an individual polling * * * we have reached a deadlock position. Could you at this time give us advice as to the procedure that we should follow? ” The defendant’s motion for a mistrial was denied. The trial court brought the jury to the courtroom and asked it to continue its deliberations and answered a question as to reasonable doubt. A half hour later, the jury had some testimony read to it for about an hour. They made no request to be discharged or for a night’s sleep. At 3:47 a.m. they brought in a verdict of guilty. The majority upheld the verdict finally reached, saying (p. 154): “ It is well established that the determination of how long a disagreeing jury will be kept together and required to continue their deliberation is a matter of sound judicial discretion which, in the absence of abuse, will not be disturbed. There are cases where juries deliberated for considerably longer periods than did this jury and had been returned to the jury room even after answering they were ‘ hopelessly deadlocked ’ or intimated they would be unable to agree, yet verdicts subsequently arrived at were not overturned.”
People ex rel. Polakowshi v. Silberglitt (13 Misc 2d 21 [1958]) involved a similar question. Mr. Justice Hecht there dealt with a petition for habeas corpus by a person in City Prison awaiting retrial on a murder charge and being held in the City Prison. His case had been submitted to a jury on three counts, murder in the first degree, in the second degree, and manslaughter. The jury deliberated from noon on December 9,1957 to 6:17 a.m. on December 10. They returned to the courtroom where the Trial Judge stated he had received a message from them that they were unable to arrive at a verdict. The foreman confirmed this. The trial court asked the jury to retire to consider whether *181 any useful purpose would be served by further deliberation. The jury came back ten minutes later and told the Clerk they were unable to agree on a verdict. The trial court then discharged the jury. The petitioner made the same contention in his petition for a writ of habeas corpus, as did the petitioner in the instant case. The court, Mr. Justice Hecht, found that the discharge of the jury complied with section 428 of the Code of Criminal Procedure, stating that the trial court was justified in relying upon the declarations the jury made on several occasions that they could not agree on the verdict. But it should be noted that in Silberglitt the jury twice reported it was unable to agree on a verdict, not that they had not arrived at a verdict, as was the case in the instant case. Furthermore, the jury, on its own motion, informed the trial court after over 18 hours of deliberation at 6:17 a.m., that they were unable to agree and, when asked by the court whether any useful purpose would be served by further deliberation, a question clearly aimed at ascertaining whether the jury would be able to agree, came back in ten minutes on its own initiative and told the court it could not. No such question directed at a consideration of the jury’s view of its ability to agree as distinguished from whether it had agreed, was put by the trial court here.
This court did not have the benefit of a memorandum of law from the prosecution on the issues raised. The only answering paper submitted in response to petitioner’s memorandum of law was the trial court’s affidavit, which dealt solely with the questions of fact and judgment discussed above. But since it is the duty of the court to enforce the law, it believes that it must discuss the propriety of the procedure used by petitioner before turning to the other questions involved in this proceeding. That a petition for a writ of habeas corpus is a proper procedure is demonstrated by People ex rel. Stabile v. Warden (202 N. Y. 138, supra), and by People v. Albanese (29 A D 2d 516, supra). Here, the petitioner is in custody and a petition for a writ of habeas corpus clearly lies, especially since the affidavit by the trial court submitted by the prosecution in opposition to the writ demonstrates the correctness of the portion of the record submitted with the petition in support of the writ of habeas corpus. There is, it is clear, no evidence to support the argument that the jury declared themselves unable to agree upon a verdict in any close time proximity to the court’s discharge of the jury, nor is there any claim, or any evidence to support any finding that counsel for the defendant consented to such discharge. Hence, it would appear that the writ sought must be granted.
*182 But a number of aspects of this matter require comment before this court can render such a decision. First there is the fact that this court is not an appellate court empowered to review the trial court’s ruling, but a court on the same judicial level as the trial court. It must, therefore, move with the utmost reluctance when it is faced with the need of taking action which seems on its face to involve a disagreement with the trial court’s interpretation of the law. If this court can find any basis whatsoever in the law to sustain the trial court’s ruling discharging the jury, it should follow that course. But this court is bound to enforce the law as it is embodied in the Federal and State Constitutions and in the State statutes. It cannot allow the deep respect it holds for the trial court to cause it to abstain from following the law as it understands it. It is sworn to uphold the law and will do so without fear or favor.
Another factor that troubles this court is that the charge against the defendant here is a serious crime, robbery in the first degree, forcibly stealing property in the course of which he uses or threatens to use a dangerous weapon, a knife in this case. Furthermore, the defendant admitted in his testimony that he had previous convictions of a number of crimes, and the prosecutor has informed the court that it is his information that the jury was 11 to 1 for conviction. To grant the writ of habeas corpus will be to allow the petitioner to go unwhipped of justice if he is, as he may be, in fact, guilty of any of the crimes with which he is charged in the indictment, to set him free because of what some might argue is merely a technical defect in the trial court’s questioning of the jury as to its views on whether it was able to agree upon a verdict. But such longstanding constitutional safeguards as the ban on double jeopardy are not lightly to be cast aside. They, too, weigh heavily in the scales of justice and in the protections of our freedoms.
Finally, this court notes that the State Legislature, in revising the Code of Criminal Procedure, altered the language of subdivision 2 of section 428 to eliminate the requirement that the jury ‘1 shall declare themselves unable to agree upon a verdict ” and .substituted a provision making the test deliberation by the jury ‘1 for an extensive period of time without agreeing upon a verdict with respect to any of the charges submitted and the court is satisfied that any such agreement is unlikely within a reasonable time ’ ’[3]. Thus, with respect to similar situations arising on or after September 1, 1971, the test would *183 not be whether the jury had declared itself unable to agree upon a verdict but whether the court, if it finds an extensive period of time has elapsed without the jury agreeing upon a verdict on any of the charges submitted, then is satisfied that any such agreement is unlikely within a reasonable time. This could be interpreted as giving the trial court greater discretion in deciding whether to discharge a jury and declare a mistrial, though it could equally well be held that the test of People ex rel. Stabile v. Warden (supra) is still a valid and necessary one.
In view of all the afore-mentioned factors, this court has decided to grant the petition for a writ of habeas corpus and for dismissal of the indictment against the petitioner, No. 1532, 1971, but it stays the effect of the order granting the petition for 15 days to enable the District Attorney to obtain an appellate stay during the perfecting of an appeal against the order if he so decides, and thus obtain a resolution of the questions raised and decided herein by the appropriate appellate court.

. The indictment contained three counts, one charging robbery in the first degree, the second charging petty larceny, and the third charging possession of a weapon, a knife with intent to use it unlawfully.

. The trial court also had indicated to the jury that if it could not reach a verdict until after its supper recess, it might be necessary to have its verdict received by another Justice since the court would be unable because of a prior engagement it could not under any circumstances put over. It did not inform the jury as it had counsel, that the prior circumstance was its having to fly to Europe.

. CPL 310.60, (subd. 1, par. [a]) which became effective September 1, 1971 (L. 1970, eh. 996, § 1, as amd. by L. 1970, ch. 997).