THE PEOPLE OF THE STATE OF NEW YORK ex rel. ANGELO NATOLI, Appellant, v. NEIL D. LEWIS, Sheriff of Chenango County, Respondent.

Third Department, July 2, 1941.

*William J. Gordon*, for the appellant.

*John J. Bennett, Jr.*, Attorney-General [*Patrick H. Clune* and *Everett D. Mereness, Assistant Attorneys-General*, of counsel], for the respondent.

HILL, P. J. Relator appeals from an order dismissing a writ of habeas corpus. On May 18, 1932, he was convicted of the crime of burglary, third degree, and sentenced to the Elmira Reformatory under the statutes and rules applicable to confinement in that institution. He was released on parole on December 6, 1933. No charge was made that he had violated his parole, and he remained at liberty for nearly seven years until August 18, 1940. On that date he was arrested, charged with robbery, first degree. Thereafter he was indicted and tried, and the jury found that he was innocent. On August nineteenth a parole warrant was issued, and served following his acquittal. A writ of habeas corpus was obtained, but dismissed by the Special Term. On March 5, 1941, this court granted his motion to fix bail, and he is now at liberty.

The warrant purporting to be the act of the Parole Board was issued on the day following the arrest for robbery. Little appears as to the procedure connected with its issuance. On the argument before the Special Term, the representative of the Attorney-General stated: " I understand he has not been declared delinquent by action of the Parole Board yet. He has to be taken into custody, as I understand it, and the action is taken while he is in custody." From the brief for the relator it appears that a Mr. Apps of Binghamton, not a member of the Parole Board but a peace officer or agent in the employ of the Board, received information by telephone from the sheriff or chief of police in Norwich that relator had been arrested for robbery. He then telephoned to the Parole Board's office in Buffalo and procured the warrant. Section 283 of the Correction Law furnishes the authority for the issuance of a warrant by the Parole Board. The portion involved reads: " If the superintendent or a member of the Board of Parole of a reformatory or a person designated or appointed pursuant to rules of the board to supervise the paroled prisoners of such reformatory has reasonable cause to believe that a paroled prisoner or one conditionally released has violated the conditions of his or her parole or release or has lapsed or is about to lapse into criminal ways or company, such superintendent, or member of the board, shall thereupon issue a warrant for the retaking of such prisoner at any time prior to his absolute discharge."

The question presented is whether one of the officials mentioned in the statute had "reasonable cause to believe" that relator had violated the condition of his parole, or had lapsed or was about to lapse into criminal ways. If such reasonable cause did not exist, the warrant was illegal, and the relator should be discharged from custody. Relator's argument is summarized: The only basis which could furnish "reasonable cause to believe that he had violated his parole or was about to lapse into criminal ways" was the arrest, and at the time of his arrest he was presumed to be innocent, which presumption became a certainty when he was acquitted by the jury; the authorities cited by the Attorney-General to sustain the argument that the acts of the Parole Board in determining whether a parole has been violated have no application, the sole question being as to whether there was "reasonable cause to believe" he was delinquent.

Mr. Justice WHITE, then an Associate Justice of the Supreme Court of the United States, later Chief Justice of the United States, in *Coffin* v. *United States* (156 U. S. 432) discusses "presumption of innocence." He examines the genesis of the common-law principle and concludes that it is a substantive common-law right of a citizen, rather than an evidentiary rule like the code requirements that guilt must be established beyond a reasonable doubt, or in a civil case the plaintiff may not prevail if he fails to establish his cause by a fair preponderance of evidence. In these days of the Gestapo it may do no harm to republish the conclusion of the great court for which Justice WHITE spoke (p. 453): "The principle that there is a presumption of innocence in favor of the accused is the undoubted law, axiomatic and elementary, and its enforcement lies at the foundation of the administration of our criminal law." (P. 454): "Greenleaf traces this presumption to Deuteronomy and quotes Mascardus De Probationibus to show that it was substantially embodied in the laws of Sparta and Athens. * * * Whether Greenleaf is correct or not in this view, there can be no question that the Roman law was pervaded with the results of this maxim of criminal administration." (P. 455): "Ammianus Marcellinus relates an anecdote of the Emperor Julian which illustrates the enforcement of this principle in the Roman law. Numerius, the governor of Narbonensis, was on trial before the Emperor, and, contrary to the usage in criminal cases, the trial was public. Numerius contented himself with denying his guilt, and there was not sufficient proof against him. His adversary, Delphidius, 'a passionate man,' seeing that the failure of the accusation was inevitable, could not restrain himself, and exclaimed, 'Oh, illustrious Cæsar! if it is sufficient to deny,

what hereafter will become of the guilty?' to which Julian replied, ' If it suffices to accuse, what will become of the innocent?' Rerum Gestarum, L. XVIII, c. 1. The rule thus found in the Roman law was, along with many other fundamental and humane maxims of that system, preserved for mankind by the canon law. Decretum Gratiani de Presumptionibus, L. II, T. XXIII, c. 14, A. D. 1198; Corpus Juris Canonici Hispani et Indici, R. P. Murillo Velarde, Tom. 1, L. II, n. 140. Exactly when this presumption was in precise words stated to be a part of the common law is involved in doubt. The writer of an able article in the North American Review, January, 1851, tracing the genesis of the principle, says that no express mention of the presumption of innocence can be found in the books of the common law earlier than the date of McNally's Evidence (1802). Whether this statement is correct is a matter of no moment, for there can be no doubt that, if the principle had not found formal expression in the common law writers at an earlier date, yet the practice which flowed from it has existed in the common law from the earliest time." (P. 456): " How fully the presumption of innocence had been evolved as a principle and applied at common law is shown in *McKinley's* case (1817), 33 St. Tr. 275, 506." (P. 460): " The fact that the presumption of innocence is recognized as a presumption of law and is characterized by the civilians as a *presumptio juris*, demonstrates that it is evidence in favor of the accused. * * * Concluding then, that the presumption of innocence is evidence in favor of the accused introduced by the law in his behalf, let us consider what is ' reasonable doubt.' It is of necessity the condition of mind produced by the proof resulting from the evidence in the cause. * * * To say that the one is the equivalent of the other is therefore to say that legal evidence can be excluded from the jury, and that such exclusion may be cured by instructing them correctly in regard to the method by which they are required to reach their conclusion upon the proof actually before them."

" Presumption of the innocence of a person charged with a criminal offense has been the immemorial principle of the common law." (*People* v. *Dillon*, 197 N. Y. 254, 259.) Thus when the relator was arrested, charged with robbery, it was his right as a citizen to have the Parole Board presume that he was innocent. The person acting in behalf of the Parole Board could not overlook that presumption in considering whether there was " reasonable cause to believe " (Correction Law, § 283) that there had been a lapse on relator's part.

When a magistrate is satisfied from depositions that a crime has been committed and that " there is reasonable ground to

believe " that the defendant is guilty, a warrant may issue. (Code Crim. Proc. § 150.) The Parole Board may issue a warrant when there is " reasonable cause to believe." " Ground " as used in one statute is synonymous with " cause " as used in the other. " If the magistrate issued the warrant of arrest without sufficient evidence in the particular case, the process is a nullity. The question, always, must be whether the magistrate acquired jurisdiction to cause an arrest of the person and the court, upon the habeas corpus proceeding, will look back of his warrant and see if the facts stated in the depositions of the prosecutor and his witnesses support his warrant. [Citations.] If they did not furnish reasonable and just ground for a conclusion that the crime charged had been committed and that the defendant committed it, then jurisdiction was lacking to hold the prisoner in custody for any time." (*People ex rel. Perkins* v. *Moss*, 187 N. Y. 410, 418.) In the same case, Judge HISCOCK, concurring with Judge GRAY, from whose opinion the above quotation is taken, says (p. 424): " Stripped of any collateral and immaterial considerations such as that of the consequences which may result to the magistrate issuing a warrant without any legal basis therefor, the naked question is whether any evidence was presented to such magistrate which showed reasonable ground for believing that the defendant had committed the crime of larceny. Unquestionably if there was no evidence justifying the inference of such guilt, the magistrate was without jurisdiction and the relator should be discharged."

" Where he is acting as a committing magistrate only, his authority to act will depend upon his having before him some evidence showing that a crime had been committed, and that there was probable cause to believe the defendant committed it. In such cases the question of whether or not the evidence before the magistrate justifies the issuance of the warrant may be tested on habeas corpus." (*People ex rel. Conway* v. *Warden of 2d Dist. Prison*, 180 App. Div. 336, 337.) " It has been repeatedly held, however, that some fact or circumstance must appear tending to establish the guilt of the accused, and that an allegation based on information and belief is insufficient. [Numerous citations.] " (*McKelvey* v. *Marsh*, 63 App. Div. 396, 398.) The message telephoned from the chief of police or the sheriff at Norwich, to Apps at Binghamton, and from the latter to Buffalo, did not furnish " reasonable cause to believe " that relator was delinquent.

The argument on behalf of relator is strengthened by his subsequent acquittal and vindication. Broad as the courts have determined the powers of the Parole Board to be, they do not grant authority to place relator twice in jeopardy. (State Const. art. 1,

§ 6.) "The defendant has been once placed in jeopardy, and is entitled by Constitution as by common law to his liberty. Although entitled to his liberty as in case of a verdict of acquittal, he is in custody with no right of appeal from any mandate by which he is restrained. The relator's constitutional rights cannot be adequately preserved other than by the writ of habeas corpus." (*People ex rel. Stabile* v. *Warden, etc.*, 202 N. Y. 138, 153.)

The order of the Special Term should be reversed on the law and facts, the writ sustained, and the relator discharged.

CRAPSER and SCHENCK, JJ., concur; BLISS, J., dissents in an opinion, in which HEFFERNAN, J., concurs.

BLISS, J. (dissenting). Our inquiry is addressed to the cause of relator's imprisonment. (Civ. Prac. Act, §§ 1230 and 1251.) Or, as stated by our Presiding Justice, the question presented is whether the Parole Board had "reasonable cause to believe" that relator had violated the condition of his parole or had lapsed or was about to lapse into criminal ways. The relator had been released from prison on parole. His subsequent arrest on the charge of grand larceny constituted reasonable cause for the belief on the part of the Parole Board that he had violated the condition of his parole and had lapsed into criminal ways. A warrant of arrest on a felony charge may be issued only upon *prima facie* proof before a magistrate that a crime has been committed and that there is reasonable ground to believe that the defendant has committed it. (Code Crim. Proc. § 150, subd. 2.) The Parole Board, therefore, had jurisdiction to issue the warrant. It is immaterial on this proceeding in habeas corpus whether the presumption of innocence is a part of our substantive law and *per se* evidence, as urged by our Presiding Justice, or is merely a rule as to the duty of producing evidence as pointed out by Professor Wigmore (Wigmore on Evidence [3d ed.], § 2511) and now held by the United States Supreme Court. (*Agnew* v. *United States*, 165 U. S. 36; *Holt* v. *United States*, 218 id. 245.) We must assume that upon its hearing the Parole Board will give full weight to the fact that relator has been found not guilty of the charge of grand larceny. But such later acquittal could not divest the Board of its jurisdiction, previously acquired, to issue the warrant.

It may be further pointed out that relator's subsequent acquittal of the grand larceny charge was not tantamount to a determination that he had not lapsed into criminal ways. The term "lapsed into criminal ways" is much broader than the commission of a crime. A parolee may lapse into criminal ways without actually committing another crime Planning of a crime or association with criminals may constitute lapsing into criminal ways when

they would not justify a conviction of a specific crime. This interpretation of the statute is fully justified not only by its language but also by the purpose of parole.

Finally, this relator is still subject to the jurisdiction of the Parole Board by virtue of the original conviction and sentence and we have no authority to review the discretion of that Board in issuing its warrant.

The order should be affirmed. ·

HEFFERNAN, J., concurs.

Order of Special Term reversed on the law and facts, writ sustained and relator discharged.