THE PEOPLE OF THE STATE OF NEW YORK ex rel. SOLOMON MASSARSKY, Relator, against WILLIAM A. ADAMS, as Warden of the City Prison of the City of New York, Defendant.

Supreme Court, Special Term, New York County, March 18, 1944.

*Myron J. Greene* for relator.

*Nathaniel L. Goldstein, Attorney-General (William F. McNulty* and *John P. Powers* of counsel), for defendant.

EDER, J. Habeas corpus proceeding. Relator was indicted by the Grand Jury of New York County charged with violations of section 340 of article 22 of the General Business Law, commonly known as the Donnelly Antitrust Act, and related offenses; indictments were returned to the Court of General Sessions; the Attorney-General appears for the People.

" Congress of Industrial Unions " is a voluntary association consisting of certain individuals of whom the relator is one; the organization had its office at 302 Broadway, New York City; and its functions were concerned with labor activities. The association had certain books and records and various documents which it kept at its said office and which were in the possession and under the control of the relator at the times herein concerned.

The Attorney-General was conducting an investigation into the association's activities, under the authority of the Donnelly Act, and in connection with such investigation issued two subpœnas directed to the " Congress of Industrial Unions " at said address and these were served upon the relator as a person in charge of its records; the subpœnas required the forthwith production by the relator of divers books, records, papers, memoranda and data therein described. Pursuant to the command of these mandates the relator produced and delivered to the Attorney-General divers records of the association and these have ever since been in the Attorney-General's possession, except insofar as they were later delivered to the Grand Jury, in whose constructive possession they now remain. These records were, admittedly, presented to and received in evidence by the Grand Jury which later returned indictments against the relator and others. The relator was arraigned, pleaded to the indictments and was released on bail; he subsequently surrendered and thereupon sued out the instant writ of habeas corpus.

The basic claim advanced in support of the writ is that by virtue of the provisions of section 345 of the General Business Law the relator was granted absolute immunity against criminal prosecution for or on account of any transaction, matter or thing concerning which he produced any evidence, documentary or otherwise, occasioned perforce such compulsory production; that in violation of said enactment the indictments were obtained and that they are founded upon and appertain to and are on account of transactions, matters or things contained in the records, papers, books, data and memoranda concerning which the relator produced documentary evidence before the Attorney-General.

The affidavit of the Assistant Attorney-General in charge, submitted in answer to the petition, contains an allegation to the effect that an examination of the indictments will indicate that the matters therein mentioned would not be and are not reflected in the books and records which were produced by the

relator and that it was necessary to establish those matters by evidence that was in no way connected with such books and records, and request was made that relator be put to his proof. Accordingly, proof was made by the relator, which I consider sufficient, and it is appropriate to note that though there was the allegation in the affidavit of the Assistant Attorney-General that the matters set forth in the indictments were shown by independent evidence entirely unconnected with said books and records, no testimony or other proof was forthcoming on behalf of the People in substantiation of the assertion. The Attorney-General has challenged the jurisdiction of this court to act in this proceeding, in the circumstances.

The fundamental questions presented are: (1) whether, in the circumstances, the relator comes within the purview and sheltering protection of section 345, and (2), if so, is habeas corpus the proper remedy or must the relator seek his discharge from custody in the Court of General Sessions.

The relator leans strongly on *People ex rel. Kenny* v. *Adams* (292 N. Y. 65) as indicating that a habeas corpus proceeding will lie and is the proper remedy to invoke. However, the question was not raised in that case and the Court of Appeals disposed of the appeal on other grounds. But it is argued that from the fact that the court treated the matter as if habeas corpus was the correct remedy, it must be inferred that it regarded the writ as the appropriate medium to employ. This may be a logical deduction though not necessarily the correct conclusion.

I shall consider and determine, firstly, whether habeas corpus is the proper remedy, for if it is not, there is then no need to consider any other feature.

After due reflection, and for the reasons currently given, I have come to the conclusion that the relator has properly invoked the writ of habeas corpus and that it is an appropriate remedy.

Section 345 of the General Business Law provides: " No person shall be excused from attending and testifying or from producing any books, papers or other documents before the attorney general or his deputy or duly authorized representative, or any court, magistrate, justice or referee upon any inquiry, investigation, proceeding or trial, pursuant to or for a violation of any of the provisions of this article, upon the ground or for the reason that the testimony or evidence, documentary or otherwise, required of him may tend to incriminate him or to convict him of a crime or subject him to a penalty

or forfeiture; but no person shall be prosecuted or subjected to any penalty or forfeiture, for or on account of any transaction, matter or thing concerning which he may so testify, or produce evidence, documentary or otherwise. And no testimony so given or produced shall be received against him upon any criminal investigation, proceeding or trial. Provided, however, no person so testifying or furnishing evidence shall be exempt from prosecution or punishment for any perjury committed by him in his testimony given as herein provided for, nor shall immunity apply to corporations or to the officers as such.''

It is to be observed that the statute is very broad in scope and is far-reaching. While it is one of immunity, it is more than that, for it is a statute of peremptory prohibition as well. Immunity is exemption and a statute of immunity confers rights of exemption only; immunity does not divest a court of the jurisdiction and power to act which it otherwise possesses over person and subject matter; its effect is merely to enable the beneficiary of the exemption to avail himself of it if he elects to do so; and this he may do in the forum in which he is brought to answer. A statutory prohibition is another matter; there, authority and power to act are withdrawn; it operates as an *ab initio* arrestment; it is a stoppage and restraint on the part of a court, tribunal or public official to act or to proceed; its effect is the denial of jurisdiction, or, where there is jurisdiction, the denial to proceed in a particular instance. Here, in addition to granting immunity the statute enjoins any prosecution; the language is explicit and peremptory: '' no person shall be prosecuted or subjected to any penalty or forfeiture, for or on account of any transaction, matter or thing concerning which he may so testify, or produce evidence, documentary or otherwise.''

Both our national and State constitutions declare that no person shall be subject to be twice put in jeopardy for the same offense (U. S. Const., 5th Amendt.; N. Y. Const., art. I, § 6); this is equivalent to saying that no person shall be twice prosecuted for the same crime. It is a definite inhibition against prosecution and the result is that there is no power to condemn the accused. Where prosecution is prohibited it has been held that the defendant need not wait until the trial to urge the claim and seek release but that he may challenge the power of the court to act, or the legality of the prosecution, in the first instance, by habeas corpus.

*People ex rel. Stabile* v. *Warden, etc.* (202 N. Y. 138) is an illustrative case; it was a habeas corpus proceeding; the relator was indicted for the crime of murder in the first degree; the defendant was brought to trial; after the jury had deliberated a short time the Trial Judge, without consultation with the defendant or his counsel, without their being informed of the purpose thereof and without the jury requesting it, summoned the jury and asked the foreman if they had agreed upon a verdict, to which he replied, "Not as yet", whereupon the Judge discharged them; the defendant claimed that the action of the court was unauthorized and that a second prosecution was tantamount to putting him in double jeopardy for the same offense and hence he was being illegally detained and deprived of his liberty and he sought release by habeas corpus. On behalf of the People it was contended, in opposition, that the relator had a complete remedy by moving for his discharge in the Court of General Sessions upon this same ground and that, therefore, habeas corpus would not lie; this contention was overruled; the court held that habeas corpus was the proper remedy under the circumstances, saying that it was a case where the facts before the court could not be materially changed, and that if there was no authority to prosecute the defendant upon the indictment there was no right to restrain him of his liberty. (See, also, *People ex rel. Bullock* v. *Hayes,* 215 N. Y. 172, to like effect.)

The case of *Hans Nielsen, Petitioner,* (131 U. S. 176) also involved the question whether habeas corpus was the proper procedure and remedy and the court held it to be proper, saying, among other things (p. 184): "A party is entitled to a *habeas corpus,* not merely where the court is without jurisdiction of the cause, but where it has no constitutional authority or power to condemn the prisoner."

While in those cases the prohibition against prosecution was a constitutional one, and in the case at bar it is statutory, the same principle is applicable; the basic ground upon which the courts acted was that there was no lawful authority to prosecute the defendant and that it followed that there was no lawful right to restrain him of his liberty and that he could obtain his release by the summary procedure of habeas corpus.

The motion to dismiss the proceeding herein upon the ground that habeas corpus cannot be invoked and maintained under the circumstances is accordingly denied.

The next point for consideration is whether the protection

afforded by section 345 of the General Business Law is available to the relator. I think it is.

The People make the point that the subpœnas did not require the relator to produce any of *his* books, papers or records, and that he produced none; that what he produced was not *his* personal or individual property but that it was the property of the " Congress of Industrial Unions ", a separate and distinct entity, one wholly apart from the officers and members composing it, and that the immunity claimed would extend only to the said association and not to its officers and members, and hence, section 345 does not apply and affords no immunity or protection to the relator. Illustrations are cited wherein an unincorporated association was regarded as a separate entity in certain and particular instances, but I do not regard them as applicable to the precise situation here involved.

But insofar as the question here in concern is to be determined, it is my view that it is immaterial whether or not the person subpœnaed has any proprietary interest in or title to the books, records and papers required to be produced, but that it is enough to obtain the protection of the statute that such person has their possession or control. In this connection I shall consider the subject from two angles.

*First,* the general rule is that an unincorporated association is not considered a legal entity separate and apart from the members who compose it. (*New York Elec. Assn.* v. *Local Union No. 3, etc.,* 176 Misc. 991; 5 C. J., Associations, §§ 2, 32.) Viewed from that perspective, the relator possessed title to and had a proprietary interest in the books and records and various data which the subpœnas commanded him to produce.

" Congress of Industrial Unions " was neither a corporation, a partnership nor a joint stock company; it was what is known as an association or a voluntary association, and the title to its property was vested in all its members (*Schein* v. *Erasmus Realty Co., Inc.,* 107 Misc. 27, affd. 194 App. Div. 38; 5 C. J., Associations, § 32) ; the fact that in some jurisdictions it is held that such an association may sue or be sued as an entity has nothing to do with the element of title to the property of such an association; such title is not and cannot be in the association as a separate entity; in legal effect and result, therefore, each subpœna was a command to the relator to produce *his* books and records, and by doing so he acquired and obtained the protection of the statute against any prosecution against him, for or on account of any transaction, matter or thing concerning which he was required to produce evidence, documentary or otherwise.

Another point raised is that the subpœnas were not addressed to the relator by name as an individual but were addressed to the "Congress of Industrial Unions"; this is of no consequence and is immaterial; the fact that it was addressed to him by an erroneous name or by a fictitious name would not change its effect. If the name of a party sought to be summoned is unknown he may be described by any designation; in *Pindar* agt. *Black* (4 How. Prac. 95, 97) it was held that a defendant whose name was unknown might be designated by a descriptive name as: " *the man in command of the sloop Hornet* ". So, here, describing the relator in the subpœnas as " Congress of Industrial Unions ", but serving upon him as the person intended to be subpœnaed, was enough; it is sufficient that the process is served upon the party intended.

Viewing it from the second angle, it is my opinion that even if the association was a separate and distinct entity, and the books and records sought by the subpœnas were its separate property but were in the possession or control of the relator, and he was served with that process, commanding and intending him as the person required to produce them, he was nonetheless required to produce them as much as if they were his own and he thereupon obtained the protection of the statute as if they actually belonged to him. The language of the statute is very broad and comprehensive; it declares that " *no person* " (italics mine) shall be excused from testifying or producing any books, papers or other documents, and makes no distinction whether they be his own or not, and further provides that " *no person* " shall be prosecuted by reason of any evidence produced pursuant to such process, except only insofar as immunity is denied to corporations or to the officers as such by the express reservation in the statute. A like contention was made by the State in *People* v. *Finkelstein* (299 Ill. App. 363) involving a similar statute and was rejected.

It is urged on behalf of the People that a construction making the statute applicable to one merely in possession or control of documentary evidence and rendering him immune, though such documentary evidence be the property of another, would mean that investigations of labor unions would be throttled and public prosecutors rendered helpless, since, upon the delivery of a subpœna to any officer of such an association, every member thereof would be immune from prosecution; that in many instances labor unions comprise thousands of individuals and to sustain relator's contention would place unions and their membership in a class virtually exempt from criminal responsibility.

I disagree with this premise. But even if such a result were to obtain by virtue of such a construction, I regard it as of far greater importance that the constitutional and statutory protection against self incrimination be maintained.

The Attorney-General submitted copies of the indictments found against the relator as part of the return to the writ. Therein matters appear concerning the activities of the relator and the Congress of Industrial Unions with respect to Dessart Brothers, T. Cohen, United States Glass Company, Kuhmarker Company and M. Wasserman; testimony was given by the relator's witness Kaufman and undisputed by the Attorney-General, that the files of data and papers delivered to the Attorney-General pursuant to the subpœnas contained the names of the persons whose names are set forth in the indictments above mentioned, and that the said files refer to some of the data contained in the indictments. This, in my opinion, is a sufficient showing by the relator entitling him to challenge and assail the legality of the prosecutions against him.

The books, records and data which were subpœnaed were admittedly received in evidence by the Grand Jury, having been presented to that body by the Attorney-General; but I regard it as being of secondary importance whether the indictments were wholly founded upon anything derived therefrom; it would be sufficient, in my opinion, to entitle the relator to the protection of the statute if they merely disclosed anything which would furnish a clue to some evidence against him. (See *People v. Finkelstein*, 299 Ill. App. 363, *supra*.) Moreover, I am in accord with the view expressed in the *Finkelstein* case that it is entirely immaterial what use, if any, the Attorney-General made of the books and records and other data produced by the relator, for section 345 does not provide or intend that the evidence, documentary or otherwise, produced or given to the Attorney-General must be used before the Grand Jury before immunity can be claimed. As said in the *Finkelstein* case (*supra*, p. 379): "It would defeat the very purpose of the immunity provision * * * if the State could prevent immunity by withholding the documentary evidence in the instant case from the grand jury. Nor does it matter whether or not the books, records, etc., tended to incriminate defendant in error."

I agree, too, with the view there expressed (p. 381) that under those circumstances, when a party produces the books, records and data in response to the command of the subpœna

served upon him, the immunity provisions of the statute and the prohibitions therein against prosecution attach *eo instanti* and take immediate effect.

For the foregoing reasons I conclude that the indictments found against the relator were obtained in violation of the provisions of said section 345 of the General Business Law and that the indictments and prosecution are wholly without lawful warrant or authority and are null and void and that the relator is entitled to his discharge from his present detention and restraint, and, accordingly, the writ of habeas corpus is sustained and the relator's discharge is directed.